IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**SHIRLEY BLACK,** *et al.*                                                                                          **PLAINTIFFS**

**v.**                                        **Case No. 4:18-cv-00778 KGB**

**DRIVELINE RETAIL
MERCHANDISING, INC.**                                                                          **DEFENDANT**

## ORDER

Plaintiffs Shirley Black, Rena McCraw, and Rebecca Morris bring this proposed collective action against defendant Driveline Retail Merchandising, Inc. ("Driveline"). Plaintiffs allege that Driveline failed to pay all wages and overtime wages due to plaintiffs and former and current Driveline master merchandisers, merchandisers, field associates, and field merchandisers, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq*.

Before the Court is plaintiffs' motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 12). Driveline responded in opposition to the motion (Dkt. No. 18), and plaintiffs replied (Dkt. No. 19). For the reasons that follow, the Court denies at this time plaintiffs' motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 12).

### I.      Factual Background

Plaintiffs are all employed by Driveline and paid an hourly rate (Dkt. No. 1, ¶¶ 10-13). Each plaintiff resides in Arkansas (Dkt. Nos. 12-7, ¶ 2; 12-8, ¶ 2; 12-9, ¶ 2). All worked for Driveline as hourly-paid employees within the three years just prior to the filing of this lawsuit (Dkt. Nos. 12-7, ¶ 3; 12-8, ¶ 3; 12-9, ¶ 3). Plaintiffs maintain that they, and all those similarly situated, have been classified by Driveline as non-exempt from the overtime requirements of the

FLSA and the AMWA (Dkt. No. 1, ¶ 15).  Plaintiffs contend that Driveline owns and operates a retail merchandising agency that conducts business in Arkansas and throughout the United States (*Id.*, ¶¶ 17, 18, 23; Dkt. Nos. 12-7, ¶ 5; 12-8, ¶ 5; 12-9, ¶ 5).  Plaintiffs each allege that they are personally familiar with other hourly-paid master merchandisers, merchandisers, field associates, and field merchandisers employed by Driveline in the State of Arkansas, as well as the conditions under which those employees worked (Dkt. Nos. 12-7, ¶ 4; 12-8, ¶ 4; 12-9, ¶ 4).

Plaintiffs allege that it was Driveline's "commonly applied practice to not pay Plaintiffs and other master merchandisers, merchandisers, field associates and field merchandisers for all of the hours during which they were performing labor for Defendant." (Dkt. No. 1, ¶ 27). Specifically, plaintiffs allege that Driveline had a practice of not paying these employees a lawful minimum wage for all hours worked up to 40 in one week or one and one-half times their regular rate for all hours worked in excess of 40 hours per workweek *(Id.*, ¶ 28).  Each plaintiff claims that they, along with other hourly-paid master merchandisers, merchandisers, field associates, and field merchandisers, are employed by Driveline to help perform tasks associated with maintaining Driveline's retail merchandising agency (Dkt. Nos. 12-7, ¶ 6; 12-8, ¶ 6; 12-9, ¶ 6).

Plaintiffs allege that they, along with master merchandisers, merchandisers, field associates, and field merchandisers, use an online application system to track the number of minutes worked throughout the day (Dkt. Nos. 12-7, ¶ 7; 12-8, ¶ 7; 12-9, ¶ 7).  They contend that they are required to begin their days by logging into Driveline's online portal system application to review the duties for Driveline's customer's retail stores that need to be completed that day (Dkt. Nos. 12-7, ¶ 8; 12-8, ¶ 8; 12-9, ¶ 8).  This daily task includes, but is not limited to, reviewing workorders for those jobs, arranging travel and schedule, and printing and reviewing related paperwork, according to plaintiffs (*Id.*).  Plaintiffs maintain that Driveline requires them, along

with master merchandisers, merchandisers, field associates, and field merchandisers, to do these initial daily tasks to map out travel schedules and to know what retail stores and job duties are required of each employee (Dkt. Nos. 12-7, ¶ 9; 12-8, ¶ 9; 12-9, ¶ 9).  Plaintiffs claim that they, along with master merchandisers, merchandisers, field associates, and field merchandisers, are required to spend from approximately 15 to 30 minutes every day performing these initial daily tasks of reviewing the online portal system application (Dkt. Nos. 12-7, ¶ 10; 12-8, ¶ 10; 12-9, ¶ 10).  However, plaintiffs maintain that Driveline does not pay plaintiffs, or master merchandisers, merchandisers, field associates, and field merchandisers, during the time that it takes to perform these initial daily tasks associated with reviewing the online portal system application (Dkt. Nos. 12-7, ¶ 11; 12-8, ¶ 11; 12-9, ¶ 11).  Driveline does not pay until these employees have reached their first assigned location that day (Dkt. Nos. 12-7, ¶ 12; 12-8, ¶ 12; 12-9, ¶ 12).

Once the employee reaches his or her assigned location, the employee is required to assemble, and/or break down product displays (Dkt. Nos. 12-7, ¶ 13; 12-8, ¶ 13; 12-9, ¶ 13).  Once the employee finishes those tasks, the employee is required to travel to the next assigned location that day (*Id.*).  According to plaintiffs, when traveling between assigned job locations each day, Driveline uses Google Maps to generate an estimated travel time and then pays employees a reduced hourly rate for travel time, if that generated estimate shows that it takes 30 miles or more to travel between assigned locations (Dkt. Nos. 12-7, ¶ 14; 12-8, ¶ 14; 12-9, ¶ 14).  Plaintiffs allege that Driveline only pays for the time that is in excess of 30 miles (*Id.*).  Plaintiffs allege that they, along with master merchandisers, merchandisers, field associates, and field merchandisers, are not paid for the actual minutes that are recorded when they travel between assigned locations each day (Dkt. Nos. 12-7, ¶ 15; 12-8, ¶ 15; 12-9, ¶ 15).  If actual travel time takes longer than the 30-mile generated estimated travel time, whether it be due to an inaccurate travel time estimate, weather

conditions, traffic, or something else, Driveline does not pay employees for that time (*Id.*). Plaintiffs contend that because they, along with master merchandisers, merchandisers, field associates, and field merchandisers, are only paid for travel time if that travel time is in excess of 30 miles, and not actual travel time, there are some weeks in which they are not paid for travel time at all (Dkt. Nos. 12-7, ¶ 16; 12-8, ¶ 16; 12-9, ¶ 16).

Plaintiffs each allege that these duties require them and other master merchandisers, merchandisers, field associates, and field merchandisers to work in excess of 40 hours per week in most workweeks (Dkt. Nos. 12-7, ¶ 17; 12-8, ¶ 17; 12-9, ¶ 17).  They allege it is common for them and other master merchandisers, merchandisers, field associates, and field merchandisers to be required to and to work more than 40 hours per week (Dkt. Nos. 12-7, ¶ 18; 12-8, ¶ 18; 12-9, ¶ 18).  Further, they allege that Driveline has a standard practice of not paying plaintiffs or the other master merchandisers, merchandisers, field associates, and field merchandisers for all hours worked both above and below 40 hours per week (Dkt. Nos. 12-7, ¶ 19; 12-8, ¶ 19; 12-9, ¶ 19). Plaintiffs aver that they are not paid overtime wages of one and one-half times their regular hourly rate for all hours of work in excess of 40 per week (Dkt. Nos. 12-7, ¶ 20; 12-8, ¶ 20; 12-9, ¶ 20).

Plaintiffs each assert that there are at least 40 other potential hourly-paid master merchandisers, merchandisers, field associates, and field merchandisers working for Driveline since October 19, 2015, to whom this policy applies or will apply, although plaintiffs concede that they do not know the exact number of these employees (Dkt. Nos. 12-7, ¶ 21; 12-8, ¶ 21; 12-9, ¶ 21).  Plaintiffs each assert that they were able to interact with other hourly-paid master merchandisers, merchandisers, field associates, and field merchandisers and that, based on their experience talking with these individuals, plaintiffs believe that there would be others who would

want to join this lawsuit if notice were sent to them and they were made aware of that opportunity (Dkt. Nos. 12-7, ¶ 22; 12-8, ¶ 22; 12-9, ¶ 22).

**II.    Analysis**

Under the FLSA:

> An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Many district courts in the Eighth Circuit utilize a two-step approach in collective action cases.  At the notice stage, the Court must determine, based on the pleadings and affidavits, whether notice should be given to potential class members.  The key issue is whether the members of the proposed class are similarly situated.  If the Court allows notification, then a representative class is conditionally certified, and plaintiffs will send notice to the putative opt-in plaintiffs.  At the second stage, the Court determines whether to decertify the class once discovery is largely complete.  *Smith v. Frac Tech Servs., Ltd.*, No. 4:09-cv-679, 2009 WL 4251017, at *2 (E.D. Ark. Nov. 24, 2009) (citation omitted).  This Court has previously adopted this approach.  *See McChesney v. Holtger Bros., Inc.*, No. 4:17-cv-824, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Cruthis v. Vision's*, No. 4:12-cv-244, 2013 WL 4028523, at *1-2 (E.D. Ark. Aug. 7, 2013); *Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-cv-843, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012).

"To establish that conditional certification is appropriate, the plaintiff[ ] must provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'"  *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016) (alteration in

original) (quoting *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008)).  Plaintiffs'

burden at the notice stage is lenient and may be met by making a "modest factual showing,"

typically by the submission of affidavits, that plaintiffs and the putative class members were

victims of a common decision, policy, or plan of the employer that affected all class members in a

similar fashion.  *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark.

2007) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106-08 (10th Cir. 2001)).

However, while this is a "lenient standard, . . . 'more than mere allegations' are required."

*Tegtmeier*, 208 F. Supp. 3d at 1019 (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify

a class based solely on the affidavits presented by the plaintiffs."  *Huang v. Gateway Hotel

Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citation omitted).  The Court can consider a

variety of non-exclusive factors in determining whether employees are similarly situated.  Such

factors include:  (1) whether the employees held the same job title; (2) whether they worked in the

same geographic location; (3) whether the alleged violations occurred during the same time period;

(4) whether the employees were subjected to the same policies and practices and, if so, whether

the policies and practices were established in the same manner and by the same decision maker;

and (5) the extent to which the acts constituting the alleged violations are similar.  *Stone v. First

Union Corp.*, 203 F.R.D. 532, 542-43 (S.D. Fla. 2001) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*,

252 F.3d 1208, 1219 (11th Cir. 2001); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1090, 1097-99

(11th Cir. 1996)).  "The Court does not need to determine whether class members are *actually*

similarly situated until the 'merits stage' of the litigation, when defendants typically move to

decertify the class."  *Tinsley v. Covenant Care Servs., LLC*, No. 1:14-cv-00026-ACL, 2015 WL

1433988, at *1 (E.D. Mo. Mar. 27, 2015) (emphasis in original) (citing *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1016-17 (E.D. Mo. 2010)).

In sworn affidavits, Ms. Black, Ms. McCraw, and Ms. Morris aver that they are all employed by Driveline and paid an hourly rate (Dkt. No. 1, ¶¶ 10-13).  Plaintiffs each allege that they are personally familiar with other hourly-paid master merchandisers, merchandisers, field associates, and field merchandisers employed by Driveline in the State of Arkansas, as well as the conditions under which those employees worked (Dkt. Nos. 12-7, ¶ 4; 12-8, ¶ 4; 12-9, ¶ 4).

Plaintiffs allege that it was Driveline's "commonly applied practice to not pay Plaintiffs and other master merchandisers, merchandisers, field associates and field merchandisers for all of the hours during which they were performing labor for Defendant." (Dkt. No. 1, 27).  Specifically, plaintiffs allege that Driveline had a practice of not paying these employees a lawful minimum wage for all hours worked up to 40 in one week or one and one-half times their regular rate for all hours worked in excess of 40 hours per workweek *(Id.*, ¶ 28).

Plaintiffs claim that they, along with master merchandisers, merchandisers, field associates, and field merchandisers, are required to spend from approximately 15 to 30 minutes every day performing initial daily tasks of reviewing the online portal system application (Dkt. Nos. 12-7, ¶ 10; 12-8, ¶ 10; 12-9, ¶ 10).  However, plaintiffs maintain that Driveline does not pay plaintiffs, or master merchandisers, merchandisers, field associates, and field merchandisers, during the time that it takes to perform these initial daily tasks associated with reviewing the online portal system application (Dkt. Nos. 12-7, ¶ 11; 12-8, ¶ 11; 12-9, ¶ 11).  Driveline does not pay until these employees have reached their first assigned location that day (Dkt. Nos. 12-7, ¶ 12; 12-8, ¶ 12; 12-9, ¶ 12).

Further, according to plaintiffs, when traveling between assigned job locations each day, Driveline uses Google Maps to generate an estimated travel time and then pays employees a reduced hourly rate for travel time, if that generated estimate shows that it takes 30 miles or more to travel between assigned locations (Dkt. Nos. 12-7, ¶ 14; 12-8, ¶ 14; 12-9, ¶ 14).  Plaintiffs contend that because they, along with master merchandisers, merchandisers, field associates, and field merchandisers, are only paid for travel time if that travel time is in excess of 30 miles, and not actual travel time, there are some weeks in which they are not paid for travel time at all (Dkt. Nos. 12-7, ¶ 16; 12-8, ¶ 16; 12-9, ¶ 16).

Plaintiffs each allege that these duties require them and other master merchandisers, merchandisers, field associates, and field merchandisers to work in excess of 40 hours per week in most workweeks (Dkt. Nos. 12-7, ¶ 17; 12-8, ¶ 17; 12-9, ¶ 17).  They allege it is common for them and other master merchandisers, merchandisers, field associates, and field merchandisers to be required to and to work more than 40 hours per week (Dkt. Nos. 12-7, ¶ 18; 12-8, ¶ 18; 12-9, ¶ 18).  Further, they allege that Driveline has a standard practice of not paying plaintiffs or the other master merchandisers, merchandisers, field associates, and field merchandisers for all hours worked both above and below 40 hours per week (Dkt. Nos. 12-7, ¶ 19; 12-8, ¶ 19; 12-9, ¶ 19).  Plaintiffs aver that they are not paid overtime wages of one and one-half times their regular hourly rate for all hours of work in excess of 40 per week (Dkt. Nos. 12-7, ¶ 20; 12-8, ¶ 20; 12-9, ¶ 20).

Plaintiffs each assert that there are at least 40 other potential hourly-paid master merchandisers, merchandisers, field associates, and field merchandisers working for Driveline since October 19, 2015, to whom this policy applies or will apply, although plaintiffs concede that they do not know the exact number of these employees (Dkt. Nos. 12-7, ¶ 21; 12-8, ¶ 21; 12-9, ¶ 21).  Plaintiffs each assert that they were able to interact with other hourly-paid master

merchandisers, merchandisers, field associates, and field merchandisers and that, based on their experience talking with these individuals, plaintiffs believe that there would be others who would want to join this lawsuit if notice were sent to them and they were made aware of that opportunity (Dkt. Nos. 12-7, ¶ 22; 12-8, ¶ 22; 12-9, ¶ 22).

Driveline opposes conditional class certification (Dkt. No. 18). Driveline asserts that the record evidence demonstrates that plaintiffs are not similarly situated to the proposed nationwide collective with respect to geography, job duties, or actual work performed in any given week (*Id.*, at 6). Driveline maintains that, because of these dissimilarities among the putative class and the unmanageable nature of such a class, which Driveline estimates as significantly more than 13,855 members, the Court should deny plaintiffs' motion (*Id.*). Driveline argues that it is entitled to its defenses which, given plaintiffs' claims, are fact driven (*Id.*). Driveline also argues that plaintiffs have not provided any admissible evidence that one or more common, uniformly-administered Driveline practices or policies violates the FLSA (*Id.*). Moreover, Driveline maintains that plaintiffs aver familiarity with the State of Arkansas but no other geographic area (*Id.*, at 17-19), that the job duties for the positions identified by plaintiffs vary depending on assignments and leadership duties and that these variances directly relate to whether an individual may be entitled to additional pay under plaintiffs' theories (*Id.*, at 19-20), and that plaintiffs do not allege any unpaid reported hours, which Driveline maintains is important because Driveline's policy is that employees will be paid for all worked time reported on Driveline's intranet or reported directly to the employee's district manager (*Id.*, at 20-22).

As an initial matter, the Court agrees with Driveline that plaintiffs each are familiar with working for Driveline in the State of Arkansas (Dkt. Nos. 12-7, ¶ 4; 12-8, ¶ 4; 12-9, ¶ 4), but plaintiffs present no basis on which this Court can determine that they are familiar with working

for Driveline in any other state.  Further, as explained elsewhere in this Order, the Court cannot

discern how plaintiffs allege Driveline's policies denied, or how Driveline applied its policies to

deny, plaintiffs compensation for hours worked or how plaintiffs are similarly situated to members

of the proposed nationwide collective.  As a result, the Court is not convinced that this is a case in

which a common Driveline policy or practice applied to all employees nationwide and had a

similar impact on all employees nationwide.  Therefore, at this stage and on the record evidence

before it, the Court is unwilling to certify a nationwide collective.

Driveline offers the following record evidence regarding its policies and practices, which

at this point appears undisputed by plaintiffs:

- Driveline sends notice of available projects to the merchandisers, who can then accept or decline individual projects (Dkt. No. 18-1, ¶ 18).

- Notice of available projects includes details about the project, including where the store is located and how much time Driveline has allotted for completion of the project, including any administrative time necessary to complete the project (*Id.*, ¶ 19).

- In some instances, the customer specifies the time for which it will pay for work on a project, and in those instances, Driveline instructs the merchandiser to stop working on the project when he or she reaches the specified time limit (*Id.*, ¶ 20).

- In other instances, Driveline provides a predetermined period for performing the in-store work and related tasks; these are set based on time studies and feedback from merchandisers and managers regarding how much time was necessary to complete in-store tasks, to drive to the store, and to perform any necessary administrative tasks related to the particular work (*Id.*, ¶ 21).

- When a merchandiser accepts a project through the Driveline intranet, the merchandiser is required to acknowledge certain "Terms and Acceptance of Work" (*Id.*, ¶ 31; Dkt. No. 18-3).

- Although revised over time, the "Terms and Acceptance of Work" have consistently included a policy regarding payment for all time worked, according to Driveline (Dkt. No. 18-1, ¶ 32).

- Generally, there are three different types of tasks a merchandiser may perform, depending on a variety of factors.  Driveline characterizes these tasks as dedicated teams, resets, and smaller projects (*Id.*, ¶ 8-11).

-   A particular merchandiser may work on these different tasks at various times during his or her employment with Driveline, on a part-time or full-time basis (*Id.*, ¶ 12).

-   Less than 10% of Driveline merchandisers are classified as full-time employees (*Id.*, ¶ 43).

-   If a merchandiser needs additional time for a project, including any time needed for administrative projects, Driveline instructs the merchandiser to obtain written pre-approval from his or her district manager for the additional time (*Id.*, ¶ 35).

-   After a merchandiser completes an accepted project, he or she is required to confirm completion of the project through the company intranet and to submit the time he or she took to complete the project, including any time spent on administrative tasks such as logging into the company intranet, printing off work orders and store diagrams, and reporting completion of the project (*Id.*, ¶ 27).

-   Merchandisers are instructed to submit any additional time worked to their district managers for payment (*Id.*, ¶ 29).

-   Even if a merchandiser does not obtain pre-approval for additional time on a particular project, the merchandiser can submit the time to the district manager and be paid for the additional time, according to Driveline (*Id.*, ¶ 36).

-   Driveline merchandisers across the nation who are purported members of the collective were supervised by hundreds of different district managers and regional managers over the three year period of time at issue (*Id.*, ¶ 7).

-   The "Terms Of Work Acceptance Policy" provides, and Driveline maintains, that it pays for drive time incurred in completing the work, but Driveline will not pay drive time or reimburse mileage for a normal commute from the merchandiser's home to the first store on a given day or from the last store to the merchandiser's home on a given day unless home is located more than 30 miles from either the first store or last store. If home is located more than 30 miles from either the first store or last store, Driveline will reimburse for mileage and drive time incurred beyond the first 30 miles (*Id.*, ¶¶ 40-41; Dkt. No. 18-3).

Given this, the Court agrees with Driveline that it is unclear based on plaintiffs' affidavits how plaintiffs contend Driveline's policies denied, or how Driveline applied its policies to deny, plaintiffs compensation for hours worked. If the Court is unable to determine this on the record evidence, the Court is unable to determine whether or how plaintiffs are similarly situated to

members of the proposed collective and whether plaintiffs' claims are suited for collective or class treatment at all.

Moreover, plaintiffs' proposed collective makes no distinction between full-time and part-time employees, yet the record evidence indicates that the majority of employees in the proposed collective likely will be part-time Driveline employees who may not be similarly situated to plaintiffs. Plaintiffs do not account for this in their filings; it is unclear if this characterization of employees as full-time or part-time by Driveline is a basis for plaintiffs' FLSA and AMWA claims. Again, if the Court is unable to determine this on the record evidence, the Court is unable to determine whether or how plaintiffs are similarly situated to members of the proposed collective and whether plaintiffs' claims are suited for collective treatment.

Although plaintiffs' burden is lenient at this stage of the litigation, the Court concludes that plaintiffs have failed to carry their burden to demonstrate that they are similarly situated to hourly-paid master merchandisers, merchandisers, field associates, and field merchandisers who performed work for Driveline since October 19, 2015, even if the Court limits its consideration to those employees in the State of Arkansas. Having considered all record evidence before it, the Court concludes that plaintiffs' affidavits, along with all other filings and record evidence before the Court, are insufficient evidence to show that all members of the proposed collective were subject to a common policy or plan. For these reasons, at this stage of the litigation, the Court denies without prejudice plaintiffs' motion and declines to certify conditionally this action under the FLSA and AMWA for purposes of giving notice at this time.

### III.    Conclusion

For the reasons discussed above, the Court denies plaintiffs' motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 12).

12

It is so ordered this 25th day of September, 2019.

Kristine G. Baker
United States District Judge