**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

SHIRLEY BLACK, RENA MCCRAW,       )
And REBECCA MORRIS, Each          )
Individually and on Behalf of All Others   )
Similarly Situated                )
           Plaintiffs,         )
                        )
v.                                )    **Case No. 4:18-cv-778-KGB**
                        )
DRIVELINE RETAIL                  )
MERCHANDISING, INC.,              )
                        )
           Defendant.          )

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AGAINST PLAINTIFF DEREK WARD**

      Defendant Driveline Retail Merchandising, Inc. ("Driveline"), by and through its attorneys,

Phillips Murrah, P.C. and Wright, Lindsey & Jennings LLP, files this Brief in Support of its Motion

for Summary Judgment Against Plaintiff Derek Ward ("Plaintiff" or "Mr. Ward").

**I.     OVERVIEW**

      On January 14, 2019, Plaintiff filed a Consent to Join Collective Action in this lawsuit,

alleging that Defendant Driveline Retail Merchandising, Inc. ("Driveline") violated the FLSA and

AMWA for failure to pay minimum wage for all hours worked and overtime for all hours worked

over 40 in a given week. *See* Undisputed Fact No. 1.  Since joining this lawsuit over three years

ago, Plaintiff has not produced a single record supporting his claim of $47,095.97 in damages for

uncompensated time.  Plaintiff testified in his deposition that when he initially met with his

attorney, he provided his attorney "some emails" allegedly evidencing some uncompensated time

as well as a "little notebook" with some calculations that he had made of his damages in this case.

Despite Driveline asking for the production of any such records on multiple occasions, Plaintiff

1

has failed to produce a single record in support of his claims through the discovery deadline, nearly two months after Plaintiff's deposition.

As of the filing of this Motion, Plaintiff has only produced vague answers to Driveline's Interrogatories and an unsupported damages calculation—and Plaintiff then testified under oath that he had never seen either document that he had purportedly produced until Driveline's counsel presented them at Plaintiff's deposition. Plaintiff's deposition testimony was both internally contradictory and expressly contradicted his verified answers to Interrogatories and initial damages disclosures. On the date of the discovery deadline, two months after Plaintiff's deposition, Plaintiff's counsel produced a second damages calculation containing the exact same estimates that Plaintiff had testified under oath were unreasonable and incorrect.

Driveline has produced over 11,000 documents over the three years that since Plaintiff joined this litigation and has incurred significant costs and expenses in preparing its defenses and taking each of the plaintiffs' depositions. Based on the total lack of any evidentiary support for Plaintiff's claims and Plaintiff's internally-inconsistent and impermissibly vague deposition testimony, Driveline is entitled to summary judgment as a matter of law on each of Plaintiff's claims.

## II.    MOTION FOR SUMMARY JUDGMENT STANDARD

The Eighth Circuit summarized the law regarding summary judgment in wage and hour cases:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of [the record] … which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial.

*Torgerson v. City of Rochester,* 643 F.3d 1031, 1042-43 (8th Cir. 2011)(en banc)(internal citations and quotations omitted).

The Eighth Circuit Court of Appeals emphasized in *Torgerson* that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.  Because summary judgment is not disfavored and is designed for every action, panel statements to the contrary are unauthorized as should not be followed."  *Id.*

Even if Plaintiff can allege a factual dispute, "a disputed fact alone will not defeat summary judgment." *Torgerson,* 643 F.3d 1031, 1042 (8th Cir. 2011). Instead, "there must be a genuine issue of material fact." *Id.* (citing *Liberty Lobby,* 477 U.S. at 247-48).  When reviewing a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Id.*

The "essential inquiry" at the summary judgment stage, when viewing the record as a whole, is whether the evidence is "so one-sided that is does not present a significant disagreement to require submission to the jury." *Torgerson,* 643 F.3d at 1052.  A dispute is only genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Zimmerli v. City of Kansas City, Missouri*, 996 F.3d 857, 862-63 (8th Cir. 2021) ("There is no genuine issue of material fact when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."); *Torgerson,* 643 F.3d 1031, 1042 (8th Cir. 2011).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); *see also Barber v. C1 Truck Driver Training LLC*, 656 F.3d 782, 791 (8th Cir. 2011) (mere existence of a scintilla of evidence is not sufficient).

The nonmoving party must substantiate allegations by "sufficient probative evidence that would permit a finding in his or her favor on more than mere speculation, conjecture, or fantasy." *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059-60 (8th Cir. 2014) (quotation marks and citation omitted). Ultimately, "[e]vidence, not contentions, avoids summary judgment." *Al-Zubaidy v. Tek Industries, Inc.*, 406 F.3d 1030, 1036 (8th Cir. 2005).

## III. FACTS

Defendant incorporates by reference its Statement of Facts.

## IV. ARGUMENT

At the heart of this case is the familiar adage that it is "hard to prove a negative." Driveline maintained and produced to Plaintiff regular, detailed wage statements throughout Plaintiff's entire tenure with Driveline. Despite joining this lawsuit in January 2019 and being represented by counsel for over eight months prior to Plaintiff's resignation from Driveline, Plaintiff has failed to produce a single note, record or document evidencing his $47,000+ claim for uncompensated wages. During the same discovery period, Driveline has incurred significant legal fees and costs in responding to Plaintiff's discovery requests, producing over 11,000 documents and preparing for and taking Plaintiff's deposition.

Plaintiff repeatedly testified in his deposition that he believed he had been properly compensated throughout his employment until "the last few months of 2019," which was several months after he had joined the lawsuit in January 2019. Undisputed Facts No. 6, 7. For those "last few months," despite being represented by counsel at all times during those months, Plaintiff could not identify any specific jobs, dates, or time periods for which he was not properly compensated. Plaintiff testified in his December 2021 deposition that he had "never seen" the damages calculations produced by his counsel in July 2021. Undisputed Fact No. 25. Plaintiff further testified that he did not remember providing any calculations to his counsel to create the damages spreadsheet. *Id.*

4

Over the three years since Plaintiff joined this case, Plaintiff: (1) answered a single set of interrogatories with only vague generalities (answers which Plaintiff testified at his deposition he had never seen before that moment), (2) produced one unsworn demonstrative damages calculation (which Plaintiff adamantly testified he had never seen before his deposition and repeatedly contradicted the estimates on which the damages calculations were based), and (3) not produced a single document in response to Driveline's discovery requests or to support Plaintiff's substantial claim for damages.  As discussed in greater detail below, Plaintiff's claims are wholly speculative, internally contradictory, physically impossible, and not based on any record evidence; therefore, summary judgment in favor of Driveline is proper as a matter of law.

### A. Plaintiff's Vague and Contradictory Assertions Fail To Establish He Performed Uncompensated Work

Employers are required to keep records of wages and hours. 29 U.S.C. § 211(c).  A plaintiff who brings suit under the FLSA for unpaid overtime compensation has the burden of proving that he performed work for which he was not properly compensated.[1]  *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87, 66 S. Ct. 1187, 1192 (1946).  A plaintiff is required to present "a meaningful explanation of how he arrived at his final estimate" of hours worked during their employment, in order to show a genuine issue of material fact. *Holaway,* 771 F.3d at 1060.  To survive summary judgment, a plaintiff needs to produce admissible evidence regarding the amount and extent of work for any week worked, especially when there are claims that every week of employment involved excess hours. *Id.* at 1059.

---

[1] The FLSA and AMWA have similar provisions regarding minimum-wage and overtime compensation, such that, for purposes of the analysis below, this brief will only reference the FLSA. *See Harris v. Express Courier Int'l, Inc.,* No. 5:16-CV-05033, 2018 WL 6038242, at *3 (W.D. Ark. Nov. 16, 2018) (noting that "[t]he AMWA's minimum-wage and overtime rules predicate recovery on a worker being classified as an 'employee'—and the AMWA's definition of 'employee' is exactly the same as the FLSA. *Compare* Ark. Code Ann. § 11-4-203(3) *to* 29 U.S.C. § 203(e)(1)").

1. Driveline Maintained Accurate Time Records Throughout Plaintiff's Employment, So the Stringent Evidentiary Standard Applies

In the case at hand, it is undisputable that Driveline maintained specific time records throughout Plaintiff's employment, all of which are attached to this Motion as Exhibit 2 (Wage Records). *See* Undisputed Fact No. 4.   A sample of Mr. Ward's wage statements from 2018 and 2019 clearly show columns for "regular" time, "drivetime," and "overtime," as well as specific reimbursement for "miles."   Undisputed Fact No. 22.   Further, Mr. Ward's damages calculations, both the original calculation produced by Mr. Ward prior to his December 2021 deposition and the calculation produced two months after his deposition, explicitly acknowledge and confirm that Mr. Ward **was** regularly compensated for "drive time hours" on each wage statement throughout his employment.   Undisputed Fact No. 21 (see Plaintiff's acknowledgement of Driveline's payments for those drivetime and mileage for each pay period); Undisputed Fact No. 22 (Driveline paystubs showing payments for "drivetime" and reimbursement for "miles"); Undisputed Fact No. 4 (Driveline wage records for each pay period of Plaintiff's employment).

Based on the above, the more stringent evidentiary standard applies to Plaintiff's burden of proof in specifically showing that he was not properly compensated for every  hour of worked time claimed in this suit.   *Carmody v. Kan. City Bd. of Police Comm'rs,* 713 F.3d 401, 406 (8th Cir. 2013).   Because Plaintiff has not provided any "admissible evidence regarding the amount and extent of work for any week worked," Driveline is entitled to summary judgment as a matter of law. *Holaway,* 771 F.3d at 1059.

2. If an Employer Fails to Maintain Time Records, a Plaintiff Must Produce Sufficient Evidence of Damages Under a More Relaxed Standard

As discussed above, it is Driveline's position that the stringent evidentiary standard applies to Plaintiff's claims because Driveline indisputably kept records of Plaintiff's worked time throughout his employment.   If an employer fails to maintain accurate time records, however, an employee is only relieved of proving the exact extent of uncompensated work—the employee must still provide admissible evidence sufficient to support a relaxed evidentiary standard.   *See Carmody*

*v. Kan. City Bd. of Police Comm'rs,* 713 F.3d 401, 406 (8th Cir. 2013). The relaxed standard is met if an employee produces sufficient evidence to show the amount and extent of work "as a matter of just and reasonable inference." *Id.*

While the burden may be relaxed, it is not eliminated, and the employees must still prove the existence of damages. *Id.* at 407. General allegations, couched in base assertions and vague testimony that fails to reference specific days and hours worked, fail to meet "even the relaxed evidentiary standards." *Id.* at 1059-1060. The Eighth Circuit Court of Appeals has repeatedly held that general allegations couched in base assertions and vague testimony that fails to reference specific days and hours worked fails to meet even a relaxed evidentiary standard. *Holaway v. Stratasys, Inc.,* 771 F.3d 1057, 1059-60 (8th Cir. 2014). A plaintiff's speculation and conjecture are insufficient to defeat summary judgment. *Gannon Intl, Ltd. v. Blocker,* 684 F.3d 785, 794 (8th Cir. 2012) (citing *Bloom v. Metro Heart Group of St. Louis, Inc.,* 440 F.3d 1025, 1028 (8th Cir. 2006)). The Court cannot rely on "mere speculation, conjecture, or fantasy" to deny a motion for summary judgment. *Moody v. St. Charles Cty.,* 23 F.3d 1410, 1412 (8th Cir. 1994). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of a ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In *Thompson,* the plaintiff "failed to put forward any evidence of the amount and extent of his on-call work that exceeded 40 hours a week for any specific week he was on call," and instead he "provided contradictory and bare assertions of how he spent his on-call time and of his overtime hours worked while he was on call." *Thompson v. Shock,* No. 4:13-cv-735-KGB, 2015 U.S. Dist. LEXIS 81902, at *39-40 (E.D. Ark. June 24, 2015). This Court held that such bare assertions, without presenting admissible evidence regarding specific weeks worked beyond 40 hours, failed to meet even the relaxed evidentiary standard. *Id.* In *Meinke,* an FLSA plaintiff claimed that that

7

his work hours were changed or not recorded, but he did not produce any admissible evidence regarding specific dates, supporting documents, or other corroborating information to support his assertions. *Meinke v. S. Paramedic Servs.,* No. 4:15-cv-448-DPM, 2017 U.S. Dist. LEXIS 3336, at *3 (E.D. Ark. Jan. 10, 2017). Judge Marshall likewise held for the employer, finding that the plaintiff's bare assertions were not sufficient evidence of unpaid time worked, and that the plaintiff's assertions alone could not support a jury's finding that the plaintiff worked unpaid overtime in a given week. *Id.* In *Vanhorn,* Judge Moody granted defendant's motion for summary judgment because the plaintiff's damages calculations and testimony were inconsistent and the plaintiff did not produce "any corroborating testimony from a single witness or provide any further documentation ... to support his overtime claims." *Vanhorn v. Tasneem Enter.,* No. 4:13-cv-722, 2015 U.S. Dist. LEXIS 179579, at *8 (E.D. Ark. May 13, 2015).

The *Carmody* court similarly found that police officers who generally described overtime occurrences without specific dates worked, specific hours worked, or money owed could not even satisfy the relaxed evidentiary burden with unsupported estimations. *Carmody,* 713 F.3d at 407.

In *Holaway,* an employee who worked independently out of his home and at client locations throughout his assigned region brought an FLSA claim against his former employer for violations of the FLSA, alleging that his employer did not properly pay overtime due to his alleged misclassification as an exempt employee. *Holaway v. Stratasys, Inc.,* 771 F.3d 1057 (8th Cir. 2014). The employee sought damages based on his estimate that he had worked around 60 hours per week every week of his employment. In his deposition, Plaintiff testified that his day-to-day and week-to-week schedule varied, but that—outside of this 8 AM to 5 PM schedule--he generally worked two to three hours doing preparation work, three to four hours traveling to locations, spent four to five hours driving to a client's site or hotel, three to four hours at a client's site, three to four hours writing expense reports, and one to two hours arranging travel time, two to three hours

each weekend on administrative work---adding up to sixty-two to seventy hours per week. *Id.* at 1058.

The court granted the employer's motion for summary judgment based on plaintiff's failure to meet the burden of proof in showing that he worked time for which he was not compensated. *Id.* at 1060. The court held that, even under the "relaxed standard of proof" afforded to employees whose employer fails to keep contemporaneous records of wages and hours, the employee had failed to meet his burden of proof in producing sufficient evidence of uncompensated time. The Eighth Circuit Court of Appeals affirmed the judgment, holding that "[e]ven taking the evidence in the light most favorable to Holaway, the evidence is inconsistent and provides no details which would allow a jury to determine Holaway worked beyond forty hours in any specific week of his employment. Therefore, Holaway has failed to come forward with 'sufficient evidence to show the amount and extent of [overtime] work' which would allow a fact-finder to find overtime hours 'as a matter of just and reasonable inference.'" *Id.* at 1060 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). *see also Carlton v. JHook Invs., Inc.,* No. 4:17-CV-00076 KGB, 2019 WL 4784801, at *22–23 (E.D. Ark. Sept. 30, 2019) (citing multiple cases where Arkansas district courts and other district courts in the Eighth Circuit found that summary judgment was appropriate when plaintiffs offer only "bare assertions" of uncompensated time with no corroborating evidence to support their claims); *Dalton v. Hennepin Home Health Care, Inc.*, No. 15-cv-1566, 2016 WL 4402801, at *2 (D. Minn. Aug. 16, 2016) (noting that plaintiff's estimates were insufficient to meet the relaxed evidentiary standard because she had no documentation showing her hours for any specific week and because, when asked to identify a specific week when she worked more than 40 hours, she could not cite an example).

In *Middleton v. Hempstead Cty., Arkansas,* No. 4:18-CV-4112, 2021 WL 3179312, at *1– 4 (W.D. Ark. July 27, 2021), the plaintiffs claimed that they were not adequately compensated for the overtime hours they worked. The Defendant in that case argued that it was entitled to summary

judgment on this issue because Plaintiffs failed to put forth evidence sufficient to show the amount

and extent of their work in excess of the amount they were compensated.   The court granted

summary judgment for the employer, noting that

> Plaintiffs have submitted contradictory testimony and bare assertions regarding
> their overtime hours. They use vague terms, such as "sometimes" and "a lot of
> times," to describe the amount of overtime hours worked but not compensated for.
> … Maxwell estimated that in a two-week period he worked on average three to four
> overtime hours for which he was not compensated. Middleton recalled two
> instances in which he worked 75 overtime hours in a twenty-eight-day period but
> stated that he was paid for some of the overtime hours worked. He provided no
> other details regarding these instances. Plaintiffs provided these estimates without
> a meaningful explanation of how they arrived at these estimates.

*Id.* at \*3.  The *Middleton* plaintiffs claimed that their timesheets were not accurate regarding the

number of hours they actually worked. But the court noted multiple inconsistencies in the

plaintiff's testimony, including that "there is no evidence as to specific weeks that Plaintiffs

worked overtime for which they were not compensated, and Plaintiffs do not have notes or other

documents regarding their hours that they could compare to the business records kept by Defendant

regarding their hours."   *Id.*   The court held that, "even taking the evidence in the light most

favorable to Plaintiffs, the evidence is conclusory, inconsistent, not supported by specific facts,

and insufficient to allow a jury to determine the amount and extent of alleged overtime work or to

award damages." *Id.*

### 3.  Plaintiff's Claims of Uncompensated Time Fail to Meet His Burden of Proof Under Either the Strict or Relaxed Evidentiary Standard

Plaintiff was employed by Driveline as a Master Merchandiser from March 2017 through

September 2019.  Undisputed Fact No. 2.  Plaintiff's job duties primarily required him to work

alone, driving to various third-party specialty stores, drug chains, dollar stores and mass

merchandisers and setting up displays in those stores based on merchandising plans, including

resets, updates, audits, seasonal merchandising, and stocking and replenishment of product. *Id.*

As discussed above, it is always the Plaintiff's burden to produce admissible evidence "to show the *amount and extent* of work as a matter of just and reasonable inference." *Anderson,* 328 U.S. at 687-88. It is indisputable that Driveline maintained time records and provided detailed reports of Plaintiff's time worked for each bi-weekly pay period throughout his employment, so Driveline will argue that the more stringent evidentiary standard applies. *See* MSJ Exhibits 2 (Driveline Time Records) and 6 (Bennett Affidavit). Regardless, under either the strict or the relaxed evidentiary standard, Plaintiff is wholly unable to produce sufficient admissible evidence to support his alleged damages in this case.

### a. Plaintiff Cannot Assert Any Claims for Uncompensated Time in 2017 or 2018

Driveline provided Mr. Ward regular wage statements through the Driveline portal on a bi-weekly basis throughout his employment with Driveline. Undisputed Fact No. 5. For the years 2017 and 2018, Mr. Ward "looked at [his] paycheck every week and matched it against the portal and [he] felt like [he was] being paid for all the hours that [he was] working." Undisputed Fact No. 6. Mr. Ward testified in his December 15, 2021 deposition that from the time he was hired in 2017 until "the last few months of 2019," he believes he was properly paid by Driveline "from the time that [he] woke up in the morning and left for work till when [he] got home from work." Undisputed Fact No. 7. In his December 2021 deposition, Mr. Ward testified that he checked his paycheck every week and never identified any discrepancies that were not satisfactorily addressed by his supervisor, to the best of his knowledge:

> Q:    And so, during 2017 and 2018, everything looked normal on your pay stubs?
> A:    Yes.
> Q:    And did you check those pretty frequently?
> A:    Yes.

Undisputed Facts No. 6, 7.

Plaintiff further testified in his deposition that he had "never seen" the damages calculations produced by his counsel in July 2021, before it was presented to him by Driveline's counsel at the

deposition.   Undisputed Fact No. 25.  Plaintiff further testified that he did not remember providing any calculations to his counsel to create the damages spreadsheet.  *Id.*  When provided time to carefully review the damages spreadsheet to refresh his memory, Plaintiff stated again that he did not remember anything about the creation of the spreadsheet, his involvement in the creation of the spreadsheet, or whether he reviewed it for accuracy before it was produced to Driveline.  *Id.*

After reviewing the damages calculations purporting to identify substantial damages attributed to uncompensated time worked by Plaintiff in 2017 and 2018, Plaintiff again confirmed his prior testimony that he did not believe there were any discrepancies between Driveline's pay records and the hours he worked in those years.  Undisputed Fact No. 7.  Mr. Ward's deposition was taken over a year after Plaintiff's wage statements were produced by Driveline and almost six months after his counsel produced his purported damages calculations.   Undisputed Fact No. 32.

Similarly, when asked at his deposition by Driveline's counsel to review his "Answers and Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents," Mr. Ward repeatedly testified multiple times that he had "never seen this document before." Undisputed Fact No. 23.  Upon further questioning, Mr. Ward testified:

> Q:     Did you review these Responses to make sure they were factually accurate?
> A:     No.

*Id.*

Mr. Ward's verification page that was attached to his Answers and Responses to Defendant's First Set of Interrogatories declares to this Court, under penalty of perjury, "that the factual information contained in the foregoing Answers to Defendant's First Set of Interrogatories is true and correct to the best of my knowledge, information and belief."  *Id.*  In the two months between his December 2021 deposition and the February 9, 2022 discovery deadline, Mr. Ward did not provide any additional verifications or any other explanation for why he signed a document

under penalty of perjury that he testified under oath he had never seen or reviewed prior to during his deposition.

At 5:24 PM on the date of the discovery deadline, Plaintiff's counsel produced second supplemental disclosures, along with a new damages spreadsheet purporting to be Plaintiff's damages calculations. Plaintiff's damages calculations were identical to Plaintiff's previously-produced damages calculation that Plaintiff disavowed any knowledge of at his December 2021 deposition. Neither the second supplemental disclosures nor the damages calculations were verified by Plaintiff. Since the discovery deadline has now passed without Plaintiff producing a single document in support of his damages claims for 2017 and 2018, any claims for damages arising out of allegedly-uncompensated work for those years fails as a matter of law.

### b. Plaintiff's Claims for Uncompensated Wages Are Highly Contradictory and in Some Cases Claim that Plaintiff Worked More Than 24 Hours in a Single Day

When Mr. Ward was asked in his deposition about the damages calculations contained in his supplemental disclosures, he decisively contradicted his previous disclosures:

> Q:    Based on the records that we looked at, is it reasonable to estimate that you spent three and a half hours per day commuting between stores based on the records that we just reviewed?
> A:    No.
> Q:    And can you arrive at a reasonable estimate for the number of hours commuted every day or is it just impossible?
> A:    It's impossible because it's all different distances.

Undisputed Fact No. 27. In fact, Mr. Ward firmly contradicted the "estimations" that form the basis of every damages calculation in this case—repeatedly testifying in his deposition that any attempt to reasonably estimate the number of hours spent on all the allegedly-uncompensated tasks that form the basis for his damages would be "impossible," as no two days or weeks were sufficiently similar. Undisputed Facts No. 29, 30.

In Mr. Ward's deposition, he repeatedly and confidently testified that he regularly worked 60 hours per week for Driveline, or 120 hours per bi-weekly pay period, except for the month of

December, which was a slower month.   Undisputed Fact No. 31.  Driveline produced Mr. Ward's detailed payroll records to Mr. Ward more than a year prior to his deposition.  Undisputed Fact No. 32.  At his deposition, Mr. Ward testified that he had not reviewed Driveline's produced payroll records to prepare for his deposition, but that he has "no reason to doubt the accuracy of these records that were produced by Driveline" and that had contemporaneously checked the accuracy of each of his wage statements in 2017 and 2018 and found them to be accurate.  *Id.*; Undisputed Facts No. 6, 7.

Driveline issued bi-weekly paychecks to Mr. Ward throughout his employment. Undisputed Fact No. 33.   Contrary to Plaintiff's sworn testimony that he regularly worked 60 hours per week for Driveline, of the 61 wage statements issued to Mr. Ward during his employment at Driveline, Driveline's payroll records, including all the pay periods from 2017 and 2018 in which Plaintiff testified he was accurately paid for all time, show that Mr. Ward only worked close to or exceeded 60 hours per week for 7 pay periods. Undisputed Fact No. 33 (see generally for detailed breakdown of hours worked each pay period by year); *see* Undisputed Facts No. 6, 7.

Despite repeatedly testifying in his deposition that his previously-produced damages calculations were unreasonable, not based on record evidence, and/or "impossible" to even come up with a "rough estimate" of damages for various allegedly-uncompensated time, Mr. Ward did not revise his damages calculations during the two-month period following his deposition through the discovery deadline.  Undisputed Facts No. 18, 27, 34, 35. Instead, on February 9, 2022, Mr. Ward produced a damages calculation identical to the one that he testified under oath just two months before that he had never seen, did not agree with, and believed was "impossible" to produce with any reasonable accuracy, given the extreme variability between his days and weeks.

*Id.*; *see also* Undisputed Fact No. 33 for additional details regarding the variability in his hours every week.

As just one example of the sheer impossibility of Plaintiff's unsupported damages claims, Plaintiff's damages calculation sheet, identical in both his supplemental disclosures and second supplemental disclosures, claims in several instances that Plaintiff worked greater than 24 hours a day on average for each day worked in the two-week period. Undisputed Fact No. 36.  Plaintiff's counsel estimates that in various two-week periods over the course of his employment, Plaintiff worked the following hours over ten total work days per period: 175.59 hours, 145.80 hours, 157.49 hours, 180.54 hours, 237.52 hours, 205.35 hours, 273.52 hours, 209.43 hours, 140.38 hours, 147.58 hours, 211.49 hours, 207.81 hours, 167.56 hours.

Of these 13 pay periods, 11 of the pay periods are in 2017 or 2018, during which Plaintiff has repeatedly testified he was accurately paid by Driveline for all hours worked.   Undisputed Facts No. 6, 7, 36.  Further, for the pay period ending on May 11, 2018, Plaintiff's counsel estimates that Plaintiff worked 273.08 hours over only 10 days of work in that two-week period. *Id.* For the pay period ending on April 13, 2018, Plaintiff's counsel estimates that he worked 237.52 hours over 10 days of work.  *Id.* For the pay period ending on August 3, 2018, Plaintiff's counsel estimates Plaintiff worked 211.49 hours over 10 days of work.  *Id.* Thus, after three years of discovery in this case, Plaintiff continues to claim to this Court that—for many weeks of his employment--he was actually working, *on average,* 27.308 hours per day worked, 23.752 hours per day worked, and 21.149 hours per day worked.  Undisputed Facts No. 31, 36.  *See Torgerson,* 643 F.3d at 1052)(holding the "essential inquiry" at the summary judgment stage, when viewing the record as a whole, is whether the evidence is "so one-sided that is does not present a significant disagreement to require submission to the jury.")  A dispute is only genuine if the evidence is such

that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986);

Aside from the physical and logistical impossibility of Plaintiff's claimed damages calculations, the above wildly-speculative and unsupported estimates were wholly contradicted by Plaintiff's deposition testimony, as described above.   Despite repeatedly admitting that his damages calculations were wholly unreasonable during his deposition and admitting that he had never seen the calculations submitted by counsel prior to the deposition, Plaintiff did not make any effort to revise his damages calculations before Plaintiff's counsel re-submitted identical, unsworn calculations on the final day of the discovery period.  Undisputed Fact No. 35.  The physical impossibility of Plaintiff's claims to have worked, on average, more than 24 hours a day for weeks at a time, the highly-contradictory nature of Plaintiff's testimony, and unreliability of his memory regarding his hours worked for Driveline show that there is no genuine issue of material fact that could cause a reasonable jury to return a verdict in favor of Plaintiff in this case.

### c.   Plaintiff's Claims for Damages Are Not Supported by Any Admissible Evidence

Mr. Ward joined this lawsuit in January 2019.  Undisputed Fact No. 1.  Plaintiff alleged in his deposition that sometime in "the last few months of 2019," he started noticing alleged pay discrepancies when reviewing his bi-weekly wage statements.  Undisputed Fact No. 7.  Thus, Mr. Ward worked for Driveline for over eight months after he filed this lawsuit against Driveline, a period in which he had ample opportunity to record with specificity any time that he believed he was not being adequately compensated.

Despite being represented by counsel throughout the eight months in 2019 that he continued to work for Driveline, Mr. Ward has not produced a single record to support the $47,097.95 in damages that he is seeking in this case.  Mr. Ward testified in his deposition that he "sent or showed [his counsel] the non bill emails" representing time for which he may not have been compensated, but no such emails were ever produced to Driveline, either before or after Mr.

Ward's deposition. Undisputed Fact No. 9, 10. Mr. Ward further testified in his deposition that he: (a) kept a "little notebook" of the alleged "discrepancies" regarding non bills and unpaid drive time that he noticed in his pay in 2019, (b) showed his "calculations" in the notebook to his counsel when he retained Sanford law firm, and (c) was fully aware that "as part of…bringing this lawsuit that [he] was required to produce all notes and records and anything related to any of [his] claims in this case." *Id.* Despite such testimony, Mr. Ward failed to produce this "little notebook" that is purportedly full of his contemporaneous calculations or any other documents responsive to Driveline's discovery requests at any point before the discovery deadline.[2] *Id.*

Plaintiff's counsel stated during the deposition that he would "have to check and supplement [the records that Plaintiff claimed to have produced to counsel at their first meeting] but I don't have it at this time I don't believe." MSJ Exhibit 3 at 41:20-42:8 (Ward Deposition). The discovery deadline in this case was February 9, 2022, almost two months after Mr. Ward's deposition. Despite being questioned extensively about the lack of evidentiary support for his claimed damages, Mr. Ward did not produce any records, wage statements, or notes showing that he was not properly compensated for his drive time, mileage, preparation time, or any other aspect of his employment with Driveline.

In fact, Plaintiff has not produced a single document in support of his claim, other than: (1) his damages calculation, which he testified he had never seen prior to the date of his deposition or otherwise reviewed for accuracy (Undisputed Fact No. 25) and (2) his answers to Driveline's Interrogatories, which he also vehemently denied seeing or taking any part in drafting or reviewing for accuracy and contained many statements contrary to Plaintiff's deposition testimony. Undisputed Facts No. 23, 24, 25, 27, 29.

During the eight months that he continued to work for Driveline after hiring counsel and joining this lawsuit, Mr. Ward could have easily made contemporaneous notes of any allegedly-

---

[2] Exclusion under Rule 37(c)(1) is a "self-executing sanction." Advisory Committee Note, 1993 Am. to Fed. R. Civ. P. 37.

uncompensated time spent preparing for work "off the clock" in his personal home or engaging in allegedly-uncompensated work time at client stores or solo drive time.  Instead, Mr. Ward has only produced:  (1) answers to Driveline's interrogatories (which he adamantly testified he had never seen before the deposition) and (2) one single document in this case—a damages calculation (which he also testified he had never seen), in which his counsel estimates that he worked at least five hours of uncompensated time for each day that he worked throughout this employment.  *See* MSJ Exhibits 4 (Ward's Answer to Interrogatories), 7 (Supplemental Disclosures), 8 (Second Supplemental Disclosures).

Plaintiff testified in his deposition that:

(1) he was properly compensated for all work he performed for Driveline in 2017 and 2018 (Undisputed Facts No. 6, 7),

(2) after joining this lawsuit and retaining counsel, he did not keep any records of his allegedly-uncompensated drive time and testified that his counsel's calculated estimates of uncompensated drive time were "unreasonable" (Undisputed Facts No. 17, 18, 19, 20)

(3) he had no personal knowledge of the basis for the 37.71 hours of uncompensated "non bill" time alleged by Plaintiff's counsel in his damages disclosures, other than he believes he provided some emails to his counsel during their first meeting, but counsel did not produce any such emails either before the deposition or during the two months following the deposition through the end of the discovery period, and he further testified that it would be "not even reasonable to give an estimate" of the non bill time he is claiming as damages (Undisputed Facts No. 8, 9),

(4) he did not have any personal knowledge or admissible records evidencing any uncompensated time spent training other employees throughout his employment at Driveline (Undisputed Facts No. 12, 13, 14, 15, 16);

(5) he did not have any records regarding his allegedly-uncompensated "morning tasks" that he completed at home before he started his assignments for the day and such time was "different every morning" (Undisputed Fact No. 30), and

(6) he did not keep any records regarding his drive time to his first store of the day, that the 45 minute "estimate" in his damages calculations was not accurate in many cases, and he could not "reasonably estimate" such time because it varied so much each day (Undisputed Fact No. 18, 34).

Mr. Ward chose not to retain a damages expert in this case, so his repeated statements disclaiming any personal knowledge of the damages claimed in this suit and his failure to produce any admissible records in support of his claims require judgment to be entered in favor of Driveline as a matter of law. *Holaway v. Stratasys, Inc.,* 771 F.3d 1057, 1059-60 (8th Cir. 2014) (holding that general allegations couched in base assertions and vague testimony that fails to reference specific days and hours worked fails to meet even a relaxed evidentiary standard).

### d.  All of Plaintiff's Claims for Damages are Impermissibly Vague and Non-Specific

When repeatedly given the opportunity to identify which projects, tasks, or dates for which he did not receive proper payment, Plaintiff could not identify any specific projects, dates or any pay periods for which he was not properly compensated.  Plaintiff could not specify which pay periods have discrepancies, nor could he identify what the correct pay should have been if their allegations were true. During the three year discovery period, Plaintiff did not produce any contemporaneous notes or records documenting his actual total hours worked, despite the fact that he repeatedly testified in his deposition that all underpayments occurred in 2019—and he was represented by counsel at all times in 2019.  Driveline's payroll records are the only records available in this case.  Plaintiff is able to provide only general estimates based on his memory as to his actual hours worked.  He was wholly unable to provide a meaningful explanation of how he estimated his hours, other than repeatedly disavowing his counsel's damages estimates as

"unreasonable," and testifying it would be "impossible" to try to provide reasonable estimates for any category of damages he has claimed in this lawsuit.

*Holaway* requires employees to provide concrete evidence of excess work when they claim they were improperly compensated for every week of employment, as Plaintiff asserts in this case. Otherwise, an employee's inability to identify any record evidence is fatal in the employee's attempt to meet--even a relaxed evidentiary burden. Plaintiff has only presented vague, highly-contradictory, and general estimates regarding how much he uncompensated time he allegedly worked. Plaintiff in this case presents significantly less evidence than present in *Holaway* or *Carmody,* two cases where Plaintiffs were unable to meet even the relaxed evidentiary burden. Furthermore, while these two cited cases involved employers that did not keep accurate time records, in this case Driveline did keep and produce accurate time records and is therefore entitled to the more stringent evidentiary standard. However, in viewing this case in the light most favorable to Plaintiff, even if using the relaxed standard to analyze his claim, his speculative, unsworn spreadsheet produced by Plaintiff's counsel without the assistance of Plaintiff is inconsistent and provides no details that would allow a reasonable factfinder to determine the damages in this case. Therefore, Driveline is entitled to summary judgment on this issue.

## B.   Defendant Did Not Have Knowledge of the Alleged Unpaid Overtime.

In order to be liable under the FLSA, an employer must have actual or constructive knowledge that the employee has worked overtime. *Reich v. Stewart,* 121 F.3d 400, 407 (8th Cir. 1997). An employee must be compensated if the employer "knows or has reason to believe" the employee worked at times that were not compensated. *Mumbower v. Callicott,* 526 F.2d 1183, 1188 (8th Cir. 1975). "When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 876 (6th Cir. 2012). Established procedures for overtime claims that employees

regularly use can lighten the amount of inquiry required of an employer into potential overtime worked. *Hertz v. Woodbury Cry.,* 566 F.3d 775, 782 (8th Cir. 2009).

In order to prevail on his overtime claims, Plaintiff is required to present evidence that he worked more than his scheduled hours without compensation <u>and</u> that Defendants knew or should have known that Plaintiffs were working unpaid overtime. *Hertz v. Woodbury Cty.,* 566 F.3d 775, 781 (8th Cir. 2009). There is no violation of the FLSA when an employer has no knowledge that an employee is engaging in overtime work and the employee fails to notify the employer of the overtime work. *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir. 1981). When an employee "fails to follow reasonable time reporting procedures [they] [prevent] the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 876 (6th Cir. 2012).

Plaintiff cannot show that Driveline had actual or constructive knowledge that he was allegedly working unpaid overtime. The uncompensated time claimed by Plaintiff was time allegedly spent working at his home, working in a third-party store, or commuting alone in his car. Undisputed Fact No. 2, 4.

Plaintiff signed Driveline's Terms of Work Acceptance before accepting any projects. The Terms of Work Acceptance provides, in relevant part,:

> 5. I agree to complete the work within the time allowed for the work, as specified above. I understand and agree that the time allowed for the work includes administrative time (e.g., preparation for routes, completion of work orders, submission of digital photographs, etc.) as well as store time ("Instore Time"). I further understand and agree that if additional time is needed to complete the work, such additional time must be pre-approved by my manager in writing.
>
> …
>
> 10. I understand and agree that mileage and drive time ("drive time") I incur in completing the work will be calculated through the use of a route optimization powered by Google Maps/Map Quest/Other similar mapping services ("Route Optimization"). I further understand and agree that Driveline will not pay drive

21

time, or reimburse mileage, for normal commute from my home to the first store on a given day or from the last store to my home. I further understand that if the route optimization on a given day shows that my home is located more than 30 miles from either the first store or the last store, I will be reimbursed for my mileage and paid for drive time incurred beyond the first 30 miles between my home and the first store or the last store, as applicable. Any compensable mileage or drive time between my home and either the first or last store will be calculated by route optimization.

Undisputed Fact No. 3.

Plaintiff was well aware of the established procedure to address claims that he had worked more hours than allotted. Undisputed Fact No. 7. If the Plaintiff believed the hours reflected on his bi-weekly wage statement contained discrepancies, he was able to talk to his supervisor, Lisa Adair, in order to resolve the issue. Undisputed Fact No. 7. Plaintiff used that procedure throughout 2017 and 2018 with success:

> Q:    But to your knowledge until the last couple months of 2019, you never had a complaint that wasn't addressed?
> A:    I addressed every issue that I saw to Lisa and Lisa reported it to whoever was above her.
> Q:    And they were satisfactorily addressed as far as you knew?
> A;    As far as I knew, yes.
>
> …
>
> Q:    And any time you believed there was a discrepancy, you would talk to Lisa and Lisa would take care of it and you would see that work order reflected on your next paycheck, correct?
> A:    Yes.
> Q:    And that's for 2017 and 2018?
> A:    Yes.

Undisputed Facts No. 7, 37. With regards to any allegedly-uncompensated time Plaintiff worked in 2019, he claimed that he would occasionally see "discrepancies" in his pay stubs, so he would bring it to his supervisor's attention and his supervisor continued to be responsive to his concerns. Undisputed Fact No. 37.

Plaintiff testified in his deposition that he would send "non-bill" emails to his supervisor for each project that he believed he had worked that was not reflected on his wage statement and that he produced some of these emails to his counsel in 2019. Plaintiff's counsel disclaimed any

knowledge of those alleged emails and did not produce any documents on behalf of Plaintiff at any point during the discovery period, either before or after Plaintiff's deposition. Because Plaintiff was represented by counsel at all times while he allegedly sent such emails regarding issues highly-relevant to his claims and yet has not produced a single email to corroborate his testimony that he reported these alleged discrepancies to Driveline, Plaintiff cannot establish that he followed Driveline's established reporting procedures, rendering the Driveline unable to compensate him appropriately, even if he were able to provide evidence of specific work that was uncompensated.

It is undisputed that Plaintiff has presented no record evidence that he notified Driveline of any uncompensated time that he worked at home by himself or while driving alone in his car between stores in 2019 or at any time prior to 2019. Further, Plaintiff acknowledged that he had no personal knowledge of such allegedly-uncompensated time and believes it would be "impossible" to provide a reasonable estimate of the allegedly-uncompensated time. Even if any of Plaintiff's claimed damages are held to meet the evidentiary standard to survive summary judgment, it is indisputable that Driveline did not have knowledge of Plaintiff's specific claims of uncompensated working time. Therefore, Defendant is entitled to summary judgment as a matter of law.

## V. CONCLUSION

For these reasons, Driveline respectfully requests that the Court grant Defendant's Motion for Summary Judgment Against Derek Ward. Plaintiff's claims should be dismissed with prejudice because there are no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

Respectfully submitted,

*s/Lauren Barghols Hanna*
Kathryn D. Terry, Oklahoma Bar #17151
Lauren Barghols Hanna, OBA #21594
PHILLIPS MURRAH P.C.
Corporate Tower / Thirteenth Floor

101 North Robinson
Oklahoma City, OK  73102
Telephone:   (405) 235-4100
Facsimile:   (405) 235-4133
kdterry@phillipsmurrah.com
lbhanna@phillipsmurrah.com

and

WILLIAM STUART JACKSON,
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
Telephone:    (501) 371-0808
Facsimile:    (501) 376-9442
wjackson@wlj.com
***Attorneys for Defendant,***
***Driveline Retail Merchandising Inc.***

<u>CERTIFICATE OF SERVICE</u>

I, Lauren Barghols Hanna, do hereby certify that true and correct copy of the foregoing

Motion for Summary Judgment Against Plaintiff Derek Ward has been filed this 24th day of

February 2022, via the Court's CM/ECF system which delivers notice to counsel of record:

SANFORD LAW FIRM, PLLC
Josh Sanford
One Financial Center
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (800) 615-4946
Facsimile: (888) 787-2040
Josh@sanfordlawfirm.com
***Attorney for Plaintiffs***

*/s/ Lauren Barghols Hanna*
Lauren Barghols Hanna