**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| SHIRLEY BLACK, RENA MCCRAW,<br>And REBECCA MORRIS, Each<br>Individually and on Behalf of All Others<br>Similarly Situated<br>                    Plaintiffs,<br><br>v.<br><br>DRIVELINE RETAIL<br>MERCHANDISING, INC.,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 4:18-cv-778-KGB** |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AGAINST PLAINTIFF SHIRLEY BLACK**

Defendant Driveline Retail Merchandising, Inc. ("Driveline"), by and through its attorneys,

Phillips Murrah, P.C. and Wright, Lindsey & Jennings LLP, files this Brief in Support of its Motion

for Summary Judgment Against Plaintiff Shirley Black ("Plaintiff" or "Ms. Black").

## I.    OVERVIEW

On October 29, 2018, Plaintiff filed this lawsuit, alleging that Defendant Driveline Retail

Merchandising, Inc. ("Driveline") violated the FLSA and AMWA for failure to pay minimum

wage for all hours worked and overtime for all hours worked over 40 in a given week.  *See*

Undisputed Fact No. 1.  Since filing this lawsuit over three years ago, Plaintiff has produced only

a handful of documents allegedly supporting her claim of $56,708.36 in damages for

uncompensated time.

Driveline produced Plaintiffs' payroll records, records of projects completed by date, and

other responsive documents in October 2020.  In June 2021, Ms. Black's counsel produced an

unsworn spreadsheet purporting to be Plaintiff's damages calculations for this case.  In that

spreadsheet, Plaintiff appears to assert that she had worked over 3,350 uncompensated hours for

Driveline over the relevant time period.  *See* MSJ Exhibit 1 (Supplemental Damages Calculation). This calculation includes 125.54 hours for allegedly unpaid "non-bill" projects, 72 hours of allegedly unpaid "training" hours, and the rest of the time was allocated to unpaid drive time and unpaid time allegedly spent preparing for her projects in the mornings.  *Id.*

As of the filing of this Motion, Plaintiff has only produced vague answers to Driveline's Interrogatories and this unsupported damages calculation.  Plaintiff testified under oath at her December 2021 deposition that she had never seen the damages disclosure document that she had produced until it was presented to her at her deposition.  Plaintiff's deposition testimony was both internally contradictory and expressly contradicted her verified answers to Interrogatories and damages disclosures.  On the date of the discovery deadline, two months after Plaintiff's deposition, Plaintiff's counsel produced a second damages calculation containing the exact same estimates and assumptions that Plaintiff had just testified under oath were unreasonable and incorrect.

Driveline has produced over 11,000 documents over the three years that since Plaintiff joined this litigation and has incurred significant costs and expenses in preparing its defenses and taking each of the plaintiffs' depositions.  Based on the physical impossibility of the damages claims she is asserting, the lack of any evidentiary support for Plaintiff's claims, and Plaintiff's internally-inconsistent and impermissibly vague deposition testimony, Driveline is entitled to summary judgment as a matter of law on each of Plaintiff's claims.

## II.     MOTION FOR SUMMARY JUDGMENT STANDARD

The Eighth Circuit summarized the law regarding summary judgment in wage and hour cases:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  The

> movant bears the initial responsibility of informing the district court of the basis for
> its motion, and must identify those portions of [the record] … which it believes
> demonstrate the absence of a genuine issue of material fact.  If the movant does so,
> the nonmovant must respond by submitting evidentiary materials that set out
> specific facts showing that there is a genuine issue for trial.

*Torgerson v. City of Rochester,* 643 F.3d 1031, 1042-43 (8th Cir. 2011)(en banc)(internal citations

and quotations omitted).

The Eighth Circuit Court of Appeals emphasized in *Torgerson* that "summary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive

determination of every action.  Because summary judgment is not disfavored and is designed for

every action, panel statements to the contrary are unauthorized as should not be followed."  *Id.*

Even if Plaintiff can allege a factual dispute, "a disputed fact alone will not defeat summary

judgment." *Torgerson,* 643 F.3d 1031, 1042 (8th Cir. 2011). Instead, "there must be a genuine

issue of material fact." *Id.* (citing *Liberty Lobby,* 477 U.S. at 247-48).  When reviewing a motion

for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a genuine dispute as to those facts."  *Id.*

The "essential inquiry" at the summary judgment stage, when viewing the record as a

whole, is whether the evidence is "so one-sided that is does not present a significant disagreement

to require submission to the jury." *Torgerson,* 643 F.3d at 1052.  A dispute is only genuine if the

evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Zimmerli v. City of Kansas City, Missouri,* 996

F.3d 857, 862-63 (8th Cir. 2021) ("There is no genuine issue of material fact when the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party.");

*Torgerson,* 643 F.3d 1031, 1042 (8th Cir. 2011).

If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); *see also Barber*

*v. C1 Truck Driver Training LLC*, 656 F.3d 782, 791 (8th Cir. 2011) (mere existence of a scintilla of evidence is not sufficient).

The nonmoving party must substantiate allegations by "sufficient probative evidence that would permit a finding in his or her favor on more than mere speculation, conjecture, or fantasy." *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059-60 (8th Cir. 2014) (quotation marks and citation omitted). Ultimately, "[e]vidence, not contentions, avoids summary judgment." *Al-Zubaidy v. Tek Industries, Inc.*, 406 F.3d 1030, 1036 (8th Cir. 2005).

### III. FACTS

Defendant incorporates by reference its Statement of Facts.

### IV.   ARGUMENT

"Judges are not like pigs, hunting for truffles buried in briefs, and judges need not excavate masses of papers in search of revealing tidbits in support of litigants' motion, not only because rules of procedure place burden on litigants, but also because their time is scarce." *Gardner v. First American Title Ins. Co.,* 218 F.R.D. 216 (D. Minn. 2003)(citing *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) and *Northwestern Nat'l Ins. Co. v. Baltes,* 15 F.3d 660, 662-63 (7th Cir. 1994)). Similarly, a plaintiff bringing an FLSA claim against their former employer cannot be rewarded for claiming thousands of hours of uncompensated time without evidentiary support, in hopes that she can stumble upon at least a handful of hours to meet the evidentiary standard to survive summary judgment.

Plaintiff's damages claims in this case include claims that she worked more than 30.5 hours a day for every day worked in an entire two-week pay period, that she worked more than 26 hours a day for every worked day in the next two-week pay period, and that she worked 24.8 hours a day for every worked day in the following two-week period. Thus, Plaintiff asserts in her final damages calculation—submitted at 5:30 PM on the final day of the discovery period in this case—that she worked more than 24 hours a day for every single day that she worked over a six-week period in

2018. During the same discovery period, Driveline has incurred significant legal fees and costs in responding to Plaintiff's discovery requests, producing over 11,000 documents and preparing for and taking Plaintiff's deposition. As described in further detail below, Plaintiff's claims are physically impossible, internally inconsistent, and wholly at odds with her conduct while she was employed by Driveline. Plaintiff's claims should not be permitted to survive summary judgment and require Driveline to continue to disprove such wild, speculative claims that are not made in good faith.

Driveline maintained and produced to Plaintiff regular, detailed wage statements throughout Plaintiff's entire tenure with Driveline calculating the time Plaintiff spent working in stores, driving between stores, and for the mileage incurred commuting between projects during the day. Undisputed Fact No. 4. Despite filing this lawsuit in October 2018 and being represented by counsel through the remainder of her employment through her resignation on August 9, 2021, Plaintiff testified that she never put any effort into this case by attempting to calculate her actual time spent working on non-bill projects, actual uncompensated time spent training new employees, actual drive time or mileage commuting between stores during the day, actual morning preparation time, or actual drive time to her first project. Undisputed Fact No. 13. Instead, Plaintiff claims that she worked for Driveline for almost two years after filing her lawsuit without ever taking a single note or making a record of the massive hours she claimed to be working every single day without compensation. *Id.*

Despite Driveline's extensive effort to produce over 11,000 responsive documents to Plaintiff's discovery requests in October 2020, Plaintiff testified in her December 2021 deposition that she had not seen any of the documents produced by Driveline showing the projects she worked, the dates she worked, and other job-specific data maintained by Driveline. Undisputed Fact No. 15, 22, 23. Further, Plaintiff claimed that she hadn't reviewed for accuracy or even seen the

5

damages calculations produced by his counsel in July 2021, had not participated in or assisted her counsel in any way in creating that document, and could provide any information regarding why various hours were included as uncompensated hours, repeatedly testifying "I cannot answer that question" or "you would have to ask whoever compiled this list." *Id.*; Undisputed Fact No. 34.

As discussed in greater detail below, Plaintiff's damages claims are physically impossible, wildly speculative, internally contradictory, and not based on sufficient record evidence; therefore, summary judgment in favor of Driveline is proper as a matter of law.

### A. Plaintiff's Vague and Contradictory Assertions Fail To Establish She Performed Uncompensated Work

Employers are required to keep records of wages and hours. 29 U.S.C. § 211(c). A plaintiff who brings suit under the FLSA for unpaid overtime compensation has the burden of proving that he performed work for which he was not properly compensated.[1] *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87, 66 S. Ct. 1187, 1192 (1946). A plaintiff is required to present "a meaningful explanation of how he arrived at his final estimate" of hours worked during their employment, in order to show a genuine issue of material fact. *Holaway,* 771 F.3d at 1060. To survive summary judgment, a plaintiff needs to produce admissible evidence regarding the amount and extent of work for any week worked, especially when there are claims that every week of employment involved excess hours. *Id.* at 1059.

1. Driveline Maintained Accurate Time Records Throughout Plaintiff's Employment, So the Stringent Evidentiary Standard Applies

---

[1] The FLSA and AMWA have similar provisions regarding minimum-wage and overtime compensation, such that, for purposes of the analysis below, this brief will only reference the FLSA. *See Harris v. Express Courier Int'l, Inc.,* No. 5:16-CV-05033, 2018 WL 6038242, at *3 (W.D. Ark. Nov. 16, 2018) (noting that "[t]he AMWA's minimum-wage and overtime rules predicate recovery on a worker being classified as an 'employee'—and the AMWA's definition of 'employee' is exactly the same as the FLSA. *Compare* Ark. Code Ann. § 11-4-203(3) *to* 29 U.S.C. § 203(e)(1)").

In the case at hand, it is undisputable that Driveline maintained specific time records during Plaintiff's employment, all of which are attached to this Motion as Exhibit 2 (Time Records). *See* Undisputed Fact No. 4.   A sample of Ms. Black's wage statements clearly show columns for "regular" time, "drivetime," and "overtime," as well as specific reimbursement for "miles." Undisputed Fact No. 4.    Further, Ms. Black's own damages calculations, both the original calculation produced by Ms. Black's counsel prior to her December 2021 deposition and the calculation produced two months after her deposition, explicitly acknowledge and confirm that Ms. Black **was** regularly compensated for "drive time hours" on each wage statement throughout her employment.  Undisputed Fact No. 39 (see Plaintiff's damages spreadsheet acknowledgement of Driveline's payments for those drivetime and mileage for each pay period); Undisputed Fact No. 4 (Driveline wage records for Plaintiff's employment).

Based on the above, the more stringent evidentiary standard applies to Plaintiff's burden of proof in specifically showing that she was not properly compensated for every hour of worked time claimed in this suit.  *Carmody v. Kan. City Bd. of Police Comm'rs,* 713 F.3d 401, 406 (8th Cir. 2013).    Because Plaintiff's unsworn damages calculation spreadsheet does not come close to "admissible evidence regarding the amount and extent of work for any week worked," Driveline is entitled to summary judgment as a matter of law for all weeks in which Plaintiff did not provide sufficient admissible evidence to support her claims.  *Holaway,* 771 F.3d at 1059.

2. <u>Even if an Employer Totally Fails to Maintain Time Records, a Plaintiff Still Must Produce Sufficient Evidence of Damages Under a More Relaxed Evidentiary Standard</u>

As discussed above, it is Driveline's position that the stringent evidentiary standard applies to Plaintiff's claims because Driveline indisputably kept records of Plaintiff's worked time throughout her employment.  If an employer fails to maintain accurate time records, however, an employee is only relieved of proving the **exact extent of uncompensated work**—the employee must still provide admissible evidence sufficient to support a relaxed evidentiary standard.  *See*

*Carmody v. Kan. City Bd. of Police Comm'rs,* 713 F.3d 401, 406 (8th Cir. 2013).  The relaxed standard is met if an employee produces sufficient evidence to show the amount and extent of work "as a matter of just and reasonable inference." *Id.*

While the burden may be relaxed, it is not eliminated, and the employees must still prove the existence of damages. *Id.* at 407.  General allegations, couched in base assertions and vague testimony that fails to reference specific days and hours worked, fail to meet "even the relaxed evidentiary standards." *Id.* at 1059-1060.  The Eighth Circuit Court of Appeals has repeatedly held that general allegations couched in base assertions and vague testimony that fails to reference specific days and hours worked fails to meet even a relaxed evidentiary standard.  *Holaway v. Stratasys, Inc.,* 771 F.3d 1057, 1059-60 (8th Cir. 2014).  A plaintiff's speculation and conjecture are insufficient to defeat summary judgment.  *Gannon Intl, Ltd. v. Blocker,* 684 F.3d 785, 794 (8th Cir. 2012) (citing *Bloom v. Metro Heart Group of St. Louis, Inc.,* 440 F.3d 1025, 1028 (8th Cir. 2006)).  The Court cannot rely on "mere speculation, conjecture, or fantasy" to deny a motion for summary judgment.  *Moody v. St. Charles Cty.,* 23 F.3d 1410, 1412 (8th Cir. 1994).  **"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it,** a court should not adopt that version of the facts for purposes of a ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added)

In *Thompson,* the plaintiff "failed to put forward any evidence of the amount and extent of his on-call work that exceeded 40 hours a week for any specific week he was on call," and instead he "provided contradictory and bare assertions of how he spent his on-call time and of his overtime hours worked while he was on call." *Thompson v. Shock,* No. 4:13-cv-735-KGB, 2015 U.S. Dist. LEXIS 81902, at *39-40 (E.D. Ark. June 24, 2015). This Court held that such bare assertions, without presenting admissible evidence regarding specific weeks worked beyond 40 hours, failed to meet even the relaxed evidentiary standard. *Id.*  In *Meinke,* an FLSA plaintiff claimed that that

his work hours were changed or not recorded, but he did not produce any admissible evidence regarding specific dates, supporting documents, or other corroborating information to support his assertions. *Meinke v. S. Paramedic Servs.,* No. 4:15-cv-448-DPM, 2017 U.S. Dist. LEXIS 3336, at *3 (E.D. Ark. Jan. 10, 2017). Judge Marshall likewise held for the employer, finding that the plaintiff's bare assertions were not sufficient evidence of unpaid time worked, and that the plaintiff's assertions alone could not support a jury's finding that the plaintiff worked unpaid overtime in a given week. *Id.* In *Vanhorn,* Judge Moody granted defendant's motion for summary judgment because the plaintiff's damages calculations and testimony were inconsistent and the plaintiff did not produce "any corroborating testimony from a single witness or provide any further documentation ... to support his overtime claims." *Vanhorn v. Tasneem Enter.,* No. 4:13-cv-722, 2015 U.S. Dist. LEXIS 179579, at *8 (E.D. Ark. May 13, 2015).

The *Carmody* court similarly found that police officers who generally described overtime occurrences without specific dates worked, specific hours worked, or money owed could not even satisfy the relaxed evidentiary burden with unsupported estimations. *Carmody,* 713 F.3d at 407.

In *Holaway,* an employee who worked independently out of his home and at client locations throughout his assigned region brought an FLSA claim against his former employer for violations of the FLSA, alleging that his employer did not properly pay overtime due to his alleged misclassification as an exempt employee. *Holaway v. Stratasys, Inc.*, 771 F.3d 1057 (8th Cir. 2014). The employee sought damages based on his estimate that he had worked around 60 hours per week every week of his employment. In his deposition, Plaintiff testified that his day-to-day and week-to-week schedule varied, but that—outside of this 8 AM to 5 PM schedule--he generally worked two to three hours doing preparation work, three to four hours traveling to locations, spent four to five hours driving to a client's site or hotel, three to four hours at a client's site, three to four hours writing expense reports, and one to two hours arranging travel time, two to three hours

each weekend on administrative work---adding up to sixty-two to seventy hours per week. *Id.* at 1058.

The court granted the employer's motion for summary judgment based on plaintiff's failure to meet the burden of proof in showing that he worked time for which he was not compensated. *Id.* at 1060. The court held that, even under the "relaxed standard of proof" afforded to employees whose employer fails to keep contemporaneous records of wages and hours, the employee had failed to meet his burden of proof in producing sufficient evidence of uncompensated time. The Eighth Circuit Court of Appeals affirmed the judgment, holding that "[e]ven taking the evidence in the light most favorable to Holaway, the evidence is inconsistent and provides no details which would allow a jury to determine Holaway worked beyond forty hours in any specific week of his employment. Therefore, Holaway has failed to come forward with 'sufficient evidence to show the amount and extent of [overtime] work' which would allow a fact-finder to find overtime hours 'as a matter of just and reasonable inference.'" *Id.* at 1060 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). *see also Carlton v. JHook Invs., Inc.*, No. 4:17-CV-00076 KGB, 2019 WL 4784801, at *22–23 (E.D. Ark. Sept. 30, 2019) (citing multiple cases where Arkansas district courts and other district courts in the Eighth Circuit found that summary judgment was appropriate when plaintiffs offer only "bare assertions" of uncompensated time with no corroborating evidence to support their claims); *Dalton v. Hennepin Home Health Care, Inc.*, No. 15-cv-1566, 2016 WL 4402801, at *2 (D. Minn. Aug. 16, 2016) (noting that plaintiff's estimates were insufficient to meet the relaxed evidentiary standard because she had no documentation showing her hours for any specific week and because, when asked to identify a specific week when she worked more than 40 hours, she could not cite an example).

In *Middleton v. Hempstead Cty., Arkansas,* No. 4:18-CV-4112, 2021 WL 3179312, at *1–4 (W.D. Ark. July 27, 2021), the plaintiffs claimed that they were not adequately compensated for the overtime hours they worked. The Defendant in that case argued that it was entitled to summary

judgment on this issue because Plaintiffs failed to put forth evidence sufficient to show the amount

and extent of their work in excess of the amount they were compensated.   The court granted

summary judgment for the employer, noting that

> Plaintiffs have submitted contradictory testimony and bare assertions regarding
> their overtime hours. They use vague terms, such as "sometimes" and "a lot of
> times," to describe the amount of overtime hours worked but not compensated for.
> … Maxwell estimated that in a two-week period he worked on average three to four
> overtime hours for which he was not compensated. Middleton recalled two
> instances in which he worked 75 overtime hours in a twenty-eight-day period but
> stated that he was paid for some of the overtime hours worked. He provided no
> other details regarding these instances. Plaintiffs provided these estimates without
> a meaningful explanation of how they arrived at these estimates.

*Id.* at *3.  The *Middleton* plaintiffs claimed that their timesheets were not accurate regarding the

number of hours they actually worked. But the court noted multiple inconsistencies in the

plaintiff's testimony, including that "there is no evidence as to specific weeks that Plaintiffs

worked overtime for which they were not compensated, and Plaintiffs do not have notes or other

documents regarding their hours that they could compare to the business records kept by Defendant

regarding their hours."   *Id.*   The court held that, "even taking the evidence in the light most

favorable to Plaintiffs, the evidence is conclusory, inconsistent, not supported by specific facts,

and insufficient to allow a jury to determine the amount and extent of alleged overtime work or to

award damages." *Id.*

### 3.  Plaintiff's Vague, Impossible and Internally-Inconsistent Claims of Uncompensated Time Fail to Meet Her Burden of Proof Under Either the Strict or Relaxed Evidentiary Standard

Plaintiff was employed by Driveline as a Merchandiser from February 2016 through August

9, 202.  Undisputed Fact No. 2.  Plaintiff's job duties primarily required her to work alone, driving

to various third-party specialty stores, drug chains, dollar stores and mass merchandisers and

setting up displays in those stores based on merchandising plans, including resets, updates, audits,

seasonal merchandising, and stocking and replenishment of product.  *Id.*

As discussed above, it is always the Plaintiff's burden to produce admissible evidence "to show the *amount and extent* of work as a matter of just and reasonable inference." *Anderson,* 328 U.S. at 687-88. It is indisputable that Driveline maintained time records and provided detailed reports of Plaintiff's time worked for each bi-weekly pay period throughout his employment, so Driveline argues that the more stringent evidentiary standard applies. *See* MSJ Exhibits 2 (Driveline Time Records) and 4 (Bennett Declaration). Regardless, under either the strict or the relaxed evidentiary standard, Plaintiff is wholly unable to produce sufficient admissible evidence to support her alleged damages in this case.

### a. Plaintiff Has Indisputably Not Provided a "Meaningful Explanation" of Her Damages Estimate

A plaintiff is required to present "a meaningful explanation of how he arrived at his final estimate" of hours worked during their employment, in order to show a genuine issue of material fact. *Holaway,* 771 F.3d at 1060. Ms. Black failed to provide any explanation at all regarding how she arrived at her damages calculations, and her estimates are vague, inconsistent and physically impossible.

Ms. Black testified in her December 2021 deposition that for roughly two years since she started her employment with Driveline, she "had no problems with [her] paychecks. Undisputed Fact No. 5. She repeatedly testified in her deposition that "it was late '18 when the discrepancies started." *Id.* On October 2, 2018, Ms. Black wrote an email to Driveline management, alleging that she had worked 29 hours through that date that had not been properly compensated by Driveline.[2] Undisputed Fact No. 7. Ms. Black's damages spreadsheet, produced two months after

---

2. When Ms. Black's counsel asked Ms. Black to specifically describe what non-bills she was "never paid for." Ms. Black responded, "Honestly, at this point, I don't know what I was and was not paid for anymore because it's all just become a mountain of paperwork jumble, so I would

Plaintiff's sworn deposition testimony, wildly and indisputably contradicts Plaintiff's testimony that she had incurred unpaid hours by that date, alleging that Ms. Black had already worked <u>over 1,400 hours of uncompensated, compensable time</u> on behalf of Driveline by October 2, 2018. *Id.* Plaintiff did not produce any documents between her deposition and the end of the discovery period that would explain Plaintiff's inconsistent position on this critical, material issue, which is solely Plaintiff's burden of proof to demonstrate the reasonableness of her estimates.

In another example of stark contradictory testimony, on December 23, 2019, after she had filed this lawsuit and had been represented by counsel for 14 months in this case, Ms. Black wrote an email to the Driveline HR department, copying the owner and the CFO of Driveline, stating that she "had not been paid correctly for a series of non-bill projects...." Undisputed Fact No. 27. Lori Bennett, the CFO of Driveline, contacted Ms. Black the same day she wrote the letter, confirmed that she had not been paid for non-bill projects in her letter, and she paid Ms. Black for all projects she could verify the same day that Ms. Black sent the letter. *Id.* In January 2020, Ms. Black and Driveline corresponded regarding the remaining jobs and mileage for which she did not believe she had been properly compensated. Undisputed Fact No. 28. In her correspondence, Ms. Black alleged that she was still owed 14.64 hours of unpaid time, plus drive time and mileage, as well as a $150.00 "Wendy's bonus," for a total of $311.63 plus drive time and mileage. *Id.* Driveline promptly investigated and paid Ms. Black for all the time that she claimed she was owed, except

---

literally have to go through every assignment line-by-line and compare it to every paycheck line-by-line at this point to know what was really paid and what wasn't. And like the back and forth for six months over the non-bills in question." Plaintiff presented no admissible evidence that she had engaged in this "essential" inquiry and created more credible damages calculations before the close of the discovery period.

the "Wendy's bonus," for which there was no evidence presented that she was entitled to claim. *Id.*; Undisputed Fact No. 29.

After Driveline paid Ms. Black in January 2019 for all time that she claimed to be owed through January 2019 (other than the Wendy's bonus that Driveline determined was not owed to Ms. Black), Ms. Black never contacted Driveline's CFO again to advise her that she was not being compensated correctly, despite Ms. Bennett's email to Ms. Black stating "please don't hesitate to reach out again if you have issues regarding your pay." Undisputed Fact No. 30. Ms. Black's paystubs stated "If there is any questions regarding your paystubs please contact your payroll administrator." Undisputed Fact No. 31. Ms. Black testified in her deposition that the only two times she contacted Driveline to advise Driveline that her payroll was incorrect was in the summer of 2018 and Christmas 2019.

By the end of December 2019, Plaintiff's final damages disclosures spreadsheet estimates that Plaintiff had incurred <u>over 2,400 hours of unpaid compensable time worked</u>. Undisputed Fact No. 28. It is **not reasonable** to believe that Plaintiff would exchange multiple emails trying to justify her entitlement to a $150 bonus for a Wendy's project and, in the same correspondence, fail to even mention the alleged 2,400+ other uncompensated hours that Plaintiff now asserts to this Court that she had incurred by that date. Ms. Black had no incentive to keep such a large claim of uncompensated time secret from the CFO of Driveline, especially when she was so helpful in promptly sorting out Ms. Black's much smaller claim for uncompensated time. Ms. Black had the full attention of the Driveline CFO, who had just personally sent her payment for $436.25 plus 49.2

miles via Venmo on December 23, 2019 to ensure she would have the money by Christmas, and asked Ms. Black to reach out personally if she ever again noticed any issues with her wage statements. Undisputed Fact No. 27, 24. Ms. Black is estopped from asserting now that she was hiding such a large claim of unpaid hours when Driveline's CFO specifically reached out to her and advised that she could help with any issues related to her pay at any time. *Id.*

Further, it requires a suspension of belief to that, while represented by counsel, Ms. Black would spend significant time and effort pursuing a discrepancy she identified regarding the above-described projects, directly correspond in writing repeatedly with the CFO of Driveline, but fail to even mention in passing the more than 2,400 additional uncompensated hours that she was purportedly entitled to as of the end of December 2019. Plaintiff indisputably failed to assert over 2,400 of received payment in full for all the hours she asserted she was owed as of January 14, 2020 (other than the $150 Wendy's bonus for which Driveline determined she was not eligible due to the date she completed those projects). Undisputed Fact Nos. 29, 30, 31. A fact-finder could not rationally determine that there is a genuine issue of material fact that Ms. Black was owed any unpaid wages as of that date above the amount for which she filed a formal complaint with Driveline's CFO to collect in December 2019.

Ms. Black had full and complete access to all her payroll records every day of her employment through August 9, 2021 and Driveline produced evidence of Plaintiff's jobs and wages in October 2020. Undisputed Fact No. 40. From when Ms. Black filed her lawsuit in October 2018 through her resignation from employment in August 2021, Ms. Black did not document any specific

time that she was working that she believed she was not being compensated for—either for

uncompensated time working in the stores, uncompensated drive time, uncompensated mileage or

uncompensated morning preparation time, not even a representative month, week or even day of

working time.  Undisputed Fact No. 23.

Further, during the 3 year discovery period in this case, Ms. Black never reviewed the

project-specific records produced by Driveline to determine "what was supposed to be paid versus

what was actually paid."  *Id.*

> Q:  But even after you stated this lawsuit you didn't document, like, the time that you
> believed you were driving in the car that you weren't being paid for?
> A:      Again, I didn't feel it was necessary because my employment records showed where
> I was working, what time I was there, the distance between stores, everything, so why would
> that be an issue?
> Q:      And—and did you review those records in coming up with your damages
> calculations?
> A:      No, my attorney did that?
> Q:      And are you aware of what your attorney did and didn't do in coming up with those
> damages calculations?
> A:      No, I trust my attorney to do his job.
> Q:      Did you review your job assignments day-by-day with your attorney in coming up
> with your job—or—
> A:      No.
> Q:      --damages calculations?
> A:      No.

*Id.*

In her December 2021 deposition, Ms. Black had never seen the damages disclosures that

Plaintiff's counsel produced in July 2021 before Driveline's counsel presented it to her.  After

reviewing the document, Ms. Black denied assisting her attorney in any way in creating that

document.  Undisputed Fact No. 34.

> Q:      And you've provided these [damages calculations] to Driveline saying that this is
> an accurate portrayal of the damages that you have incurred in this lawsuit.  And when
> you—did you work with your attorney in creating this document?

> A:    In creating the document, no.
> Q:    Okay.  And did you review it before it was produced to us?
> A:    No.  That's above my pay grade.

*Id.*  When asked to explain various calculations in the damages spreadsheet provided by her attorney as her damages disclosures, Ms. Black was unable to provide any information regarding why various hours were included as uncompensated hours, repeatedly testifying "I cannot answer that question," and "I have no idea."

> Q:    So on 12/19, 12/20/19 on that column there is—if you go over it says that on that paycheck that it says that—it says, "off the clock 50.83 unpaid hours for projects." Is that um—is that 50.83 hours what was referenced in that Venmo payment [from Driveline]?
> A:    I have no idea.
> Q:    So you don't know where any of the unpaid hours for projects come from?
> A:    I cannot tell you how my attorneys put together this sheet and what information they used other than the information they received from myself or Driveline.
> Q:    Okay.
> A:    I cannot tell you what each individual line on this sheet stands for.
> Q:    Okay.  Sitting here today, you don't know how on the 12/20/19 payroll there would be 50.83 unpaid hours, correct?
> A:    I cannot answer that question.
> Q:    Okay.  Because that is the—the time period when Ms. Bennett provided the Venmo payment; correct for $400 plus dollars?
> A:    Well, what date?
> Q:    It's—that line is 12/20/2019.
> A:    She provided the payment on 12/23, so –
> Q:    Okay.  And there's several lines in here where it talks about unpaid training hours and do you know why those are assigned to specific dates there?
> A:    I, again, you would have to ask whoever compiled this list…I did[sic] make this sheet.  I cannot tell you what each line in this sheet means.

*Id.*

In her deposition, Ms. Black could also not provide any explanation for the multiple payroll dates in 2020 that reflected exactly the same hours of pay.  Instead, she just disclaimed any knowledge of her damages disclosures, repeatedly stating that her attorney prepared the document without her assistance.

> Q:    --again, I did not prepare this sheet.  I do not know where the information—I assume it came from payroll.
> A:    Okay.  And you didn't review it for accuracy, correct?
> Q:    No, I trust my attorney.

    ....
Q:    So going back to Exhibit 16, can you explain the calculations of damages on this sheet?
A:    Again, no, I cannot.  I did not compile this sheet. You would need to speak to the person that did to tell you how they came to this number.
Q:    Do you have any just general understanding of it?
A:    No, again, I trust my attorney and I let them do their job.  I don't micro manage them.

Undisputed Fact No. 22, 36, Ex. 16.

Ms. Black acknowledged in her December 2021 deposition that it was not possible for Driveline to determine employees' actual drivetime or actual mileage incurred while commuting between stores on a day-to-day basis because employees are free to take personal time and run errands in between the assignments they accept for the day.  Undisputed Fact No. 26.  Regarding the individual assumptions that were apparently made in calculating damages, when referencing how long her "standard drive" would be to various locations from her house to her first project of the day, Ms. Black's damages calculations produced by counsel allege 45 minutes of uncompensated time per day worked. Ms. Black testified in her December 2021 deposition that there were stores that she traveled to that were only "8 miles" from her house or "15-25 minutes" from her house.   Undisputed Fact No. 35.

Further, directly contrary to her sworn deposition testimony that she did not train any employees after she filed this lawsuit in October 2018, the damages calculations contained in Ms. Black's supplemental disclosures and second supplemental disclosures allege that she was uncompensated for 12 hours of training a new employee for the pay period that ended on September 2019 and that she was uncompensated for 12 hours of training for the pay period ending on November 8, 2019, both dates well after she filed her lawsuit in this case.  Undisputed Fact No. 19.

Driveline pays employees at their typical hourly rate for all hours worked alongside a trainee.  At some point during her employment with Driveline, additional allocated time for "non bills" would be added "to a different project unrelated to the non-bill rather than just listing the

non-bill" because that was easier for payroll to process.   Ms. Black acknowledged that "she

actually didn't care how they listed it as long as [she] got paid for it." Undisputed Fact No. 17.

Undisputed Fact No. 33

In her December 2021 deposition, Ms. Black testified that she believed she had trained

"roughly eight" total employees.  Undisputed Fact No. 18.  Ms. Black did not train any employees

since she filed this lawsuit in October 2018. *Id.* Ms. Black never reported anything to Driveline

in writing that she believed she had not been properly compensated for training new employees.

*Id.* Ms. Black never looked at her paychecks prior to 2018 to determine if she had been properly

paid for all hours spent training employees prior to that time.  *Id.* In her deposition, Ms. Black

admitted that she could not give any approximate dates on which she allegedly trained these

employees and further admitted that she had not attempted to locate this information in the

documents produced by Driveline in this lawsuit.  *Id.*

> Q:   Okay.  And to your knowledge you don't have any documentation that would support that on March 3rd through 5th that you provided training?
> A:   March 3rd through 5th of what year?
> Q:   He just—you just don't have any documentation that shows the dates that you did training.
> A:   No, I could probably pull up text messages and check for the phrase, training.
> Q:   And you've done that and you've provided that to your attorneys, correct?
> A:   No, I wasn't aware that I needed to.
> Q:   Well, your suit is for damages specifically related to unpaid time for training, so—
> A:   And again, my assumption was that the payroll records would reflect that because clearly it shows that I—that they should have records that I trained this person that day because they would be on the work order with me.
> Q:   And does the work orders that you see, did they reflect that somebody is a trainee versus an employee?
> A:   Not that I recall.

*Id.*

> Q:   Okay.  So you're not sure as you sit here today whether you were or were not paid for all the time that you trained?
> A:   No, I'm sure I wasn't paid for it, but I can't prove it.
> Q:   Okay. And you can't show me any documents that show that you were not paid?
> A:   No.  I don't have any with me, no.
> Q:   And you, as far as you know, didn't send any emails or text messages raising this as an issue?

19

A:      To my knowledge right now, no.

…

Q:      And in those times you say that you talked to Lisa and said, hey, this job was scheduled for 120 minutes but we actually spent 240 minutes out here because I as training and she said, I'll talk to someone and that additional time will be on your next paycheck?

A:      Yeah.

Q:      And as you sit here today, you're just not sure if it ever was reflected or not?

A:      Correct.

*Id.*

Ms. Black elected not to retain an expert witness to testify as to damages in this case. *See* Docket Report.  Instead, in Plaintiffs' initial disclosures, Plaintiff identified herself as the individual with the most knowledge about the hours she worked for Driveline.  Undisputed Fact No. 37.   However, instead of familiarizing herself with her own damages disclosures and calculations and revising her damages calculations to be consistent with her testimony in her deposition, Ms. Black stonewalled throughout her deposition and did not allow Driveline to conduct any meaningful discovery regarding the assumptions and calculations that comprise Ms. Black's damages disclosures.   Ms. Black further failed to revise or withdraw any of the inconsistent/impossible calculations and broad assumptions that formed the basis for the damages spreadsheet at any time during the two-month period following her deposition through the discovery deadline.  Undisputed Fact No. 38.  On February 9, 2022, the discovery deadline, Ms. Black produced a damages calculation identical to the one contained in her July 2021 supplemental disclosure, despite having personally contradicted and disavowed many of the assumptions that form the foundation of the damages spreadsheet.  *Id.*

    **b.  Plaintiff's Claims for Uncompensated Wages Are Physically Impossible, Highly Contradictory, And Plaintiff Openly Disavowed Her Damages Calculations in her Deposition**

Ms. Black has been represented by counsel for almost three and a half years since she filed this lawsuit in October 2018. Until August 2021, she continued to work for Driveline in the same position that she was employed when she filed this lawsuit.

Ms. Black recognized and acknowledged that "[i]ts kind of impossible to make a general estimate" as to the hours, mileage, and distances that she drove through her employment with Driveline. Undisputed Fact No. 8   "On any given week, depending on whether [she] was doing regular projects or clean up, from say February to April and May [she] would travel all over the state in the general area from…Leslie to sometimes the other side of Hot Springs doing the cosmetic resets. And the cosmetic resets usually lasted a couple of months or someone would do it wrong and [she] would be sent in to fix it. And Monday, [she] could be in Hot Springs. Tuesday, [she] could be in Little Rock. Wednesday, [she] could be in Leslie. There's no typical week." Undisputed Fact No. 8.

> A:     Again, there's no such thing as a typical week.
> Q:     Okay.
> A:     One week I spend an entire day in one store throughout the month and a typical given day, three to five stores a day depending on what the project was.

*Id.* Some days, Ms. Black testified that she would work seven hours. *Id.* Some days she would work eight or ten hours. Ms. Black testified in her deposition that she "cannot give…a percentage on—because there was no typical day. *Id.* She acknowledged again that it was "just impossible to estimate" and she has no notes or written records "to help [her] memory in any way." *Id;* Undisputed Fact No. 6, 13 (no typical work week).

In her December 2021 deposition, when asked if she had performed any kind of analysis regarding the percentage of days she spent working only in one store vs. driving to several stores

within a single day of work, Ms. Black testified that she had not "tried to analyze it at all." Undisputed Fact No. 11. When asked whether there was any way to reasonably calculate her drivetime commuting between stores, Ms. Black testified that, as a part-time employee, she could stop for errands along the way or handle personal tasks because she was not on the clock. Undisputed Fact No. 10.

Despite the fact that she knew any type of "estimates" would be unreasonable and impossible to calculate, Ms. Black never kept any calendar, journal, chart or maintained any contemporaneous records recording when she started her projects, how much mileage she drove in a given day, how long she drove between projects for the day, when her day ended, or any other information highly relevant to her asserted claims. Undisputed Fact No. 13.

`       Plaintiff's claim that she was not compensated for the administrative time that she worked alone in her house, which alleged time she did not advise anyone at Driveline or seek compensation while she was still employed, cannot pass the "reasonableness" test required for evaluating damages at the summary judgment stage. The Terms of Work Acceptance that Ms. Black testified she signed as a condition of accepting her offered job assignments with Driveline specifically states "I understand and agree that the time allowed for the work includes administrative time (e.g. preparation for routes, completion of work orders, submission of digital photographs, etc.) as well as store time ("Instore Time"). Undisputed Fact No. 3. I further understand and agree that if additional time is needed to complete the work, such additional time must be pre-approved by my manager in writing." Undisputed Fact No. 3.

As another example of the sheer unreasonableness and impossibility of Plaintiff's unsupported damages claims, Plaintiff's damages calculation sheet, produced to Driveline's counsel on the final day of the discovery period, asserts in several instances that **Plaintiff worked greater than 24 hours a day on average for each day worked for over a six-week period.**

Undisputed Fact No. 22.   After three years of discovery in this case and after the close of the discovery period, Plaintiff continues to claim to this Court that—for many weeks of his employment--she was actually working, *on average,* 26.3 hours per day worked, 30.5 hours per day worked, and 24.8 hours per day worked.  Undisputed Facts No. 22.   *See Torgerson,* 643 F.3d at 1052)(holding the "essential inquiry" at the summary judgment stage, when viewing the record as a whole, is whether the evidence is "so one-sided that is does not present a significant disagreement to require submission to the jury.")  A dispute is only genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986);

On Ms. Black's damages calculation sheet, produced by her counsel without her review or assistance, it alleges that from the pay period ending on January 13, 2020 through her resignation in August 2021, there were over 40 total weeks (20+ pay periods) where she asserts that she worked the exact same amount of hours, had the same amount of drive time, the same overtime, etc. Undisputed Fact No. 22.   In her deposition, Ms. Black disclaimed any knowledge of why her counsel had asserted that she had worked the same exact number of hours for every week, stating "—again, I did not prepare this sheet.  I do not know where the information—I assume it came from payroll.   When asked if she reviewed such assertions for accuracy, Ms. Black responded, "No, I trust my attorney." *Id.*   A brief review of Ms. Black's compensation during that time period reveals the obvious fact that she did not work the same exact number of hours and/or have the exact same drive time and mileage every week.  *Id.*

On October 2, 2018, Ms. Black alleged to Driveline in an email that she had worked 29 hours through that date that had not been properly compensated by Driveline.  Undisputed Fact No. 7.  However, in her December 2021 deposition, Ms. Black's counsel referenced 29 hours of non

billed time and then asked Ms. Black to specifically describe what non-bills she was "never paid for." Ms. Black responded as follows:

> A:      Honestly, at this point, I don't know what I was and was not paid for anymore because it's all just become a mountain of paperwork jumble, so I would literally have to go through every assignment line-by-line and compare it to every paycheck line-by-line at this point to know what was really paid and what wasn't. And like the back and forth for six months over the non-bills in question.

Undisputed Fact No. 25.  Black further confirmed that, as of her December 2021 deposition date, she had "not verified the paystubs against each of [her] work orders to see if there was extra time included where the company reimbursed [her] for some of that time" because she "personally believe[s] that it is no longer [her] responsibility." *Id.*  As Plaintiff is the only one who can testify as to her knowledge of her own claim of unpaid time and she disclaimed any responsibility to determine if she had actually worked hours that should have been compensated, Ms. Black's vague claim that: (1) such amount may be owed, but to find out she would have to perform diligence that she had not performed in the three years that this lawsuit has been pending, and (2) Ms. Black doesn't believe it is her responsibility to perform cannot survive summary judgment.

Yet, even after admitting in her December 2021 deposition that she did not have any admissible evidence to support her estimated damages and that the estimates created by Plaintiff's counsel without her assistance were wholly inaccurate, Ms. Black did not take advantage of the two months between her deposition and the discovery deadline to record or produce any contemporaneous records that would support the damages that her counsel claims—in direct violation to Plaintiff's sworn testimony--she continued to incur every single week of her employment with Driveline. Undisputed Fact No. 29.

Ms. Black chose not to retain a damages expert in this case, so her repeated statements disclaiming any personal knowledge of the damages claimed on her behalf in this suit and her failure to produce any admissible records in support of hers claims require judgment to be entered

in favor of Driveline as a matter of law.  The highly-contradictory nature of Plaintiff's testimony, impossibility of her claims to have worked more than 24 hours during every working day for 6 weeks straight, her unsupported and disavowed damages calculations produced by Plaintiff's counsel, and unreliability of Plaintiff's memory regarding the hours worked for Driveline show that there is no genuine issue of material fact that could cause a reasonable jury to return a verdict in favor of Plaintiff in this case.  *Holaway v. Stratasys, Inc.,* 771 F.3d 1057, 1059-60 (8th Cir. 2014) (holding that general allegations couched in base assertions and vague testimony that fails to reference specific days and hours worked fails to meet even a relaxed evidentiary standard).

Plaintiff is able to provide only general estimates based on her memory as to her actual hours worked, and is estopped from seeking any uncompensated time before January 2019. .  As illustrated above, Plaintiff was wholly unable to provide a meaningful explanation of how she estimated his hours, other than repeatedly disavowing his counsel's damages estimates as "unreasonable," and testifying it would be "impossible" to try to provide reasonable estimates for any category of damages she has claimed in this lawsuit.

Aside from the physical and logistical impossibility of Plaintiff's claimed damages calculations, the above wildly-speculative and unsupported estimates were wholly contradicted by Plaintiff's deposition testimony, as described above.  Despite repeatedly admitting that his damages calculations were wholly unreasonable during his deposition and admitting that he had never seen the calculations submitted by counsel prior to the deposition, Plaintiff did not make any effort to revise his damages calculations before Plaintiff's counsel re-submitted identical, unsworn calculations on the final day of the discovery period.  Undisputed Fact No. 35.

The physical impossibility of Plaintiff's claims to have worked, on average, more than 24 hours a day for weeks at a time, the highly-contradictory nature of Plaintiff's testimony, and clear unreliability of her memory regarding her hours worked for Driveline show that there is no genuine

issue of material fact that could cause a reasonable jury to return a verdict in favor of Plaintiff in this case. Even under the relaxed evidentiary standard, *Holaway* requires employees to provide concrete evidence of excess work when they claim they were improperly compensated for every week of employment, as Plaintiff asserts in this case. An employee's inability to identify any record evidence is fatal in the employee's attempt to meet--even a relaxed evidentiary burden. Plaintiff has only presented vague, highly-contradictory, internally-inconsistent, general estimates regarding how much uncompensated time she allegedly worked.

Plaintiff in this case presents significantly less evidence than present in *Holaway* or *Carmody*, two cases where Plaintiffs were unable to meet even the relaxed evidentiary burden. Furthermore, while these two cited cases involved employers that did not keep accurate time records, in this case Driveline did keep and produce accurate time records and is therefore entitled to the more stringent evidentiary standard. However, in viewing this case in the light most favorable to Plaintiff, even if using the relaxed standard to analyze her claims, her speculative, unsworn spreadsheet produced by Plaintiff's counsel without the assistance of Plaintiff is inconsistent, and provides no details that would allow a reasonable factfinder to determine the damages in this case with the necessary degree of certainty. Therefore, Driveline is entitled to summary judgment on this issue.

### B.   Defendant Did Not Have Knowledge of the Alleged Unpaid Overtime.

In order to be liable under the FLSA, an employer must have actual or constructive knowledge that the employee has worked overtime. *Reich v. Stewart,* 121 F.3d 400, 407 (8th Cir. 1997). An employee must be compensated if the employer "knows or has reason to believe" the employee worked at times that were not compensated. *Mumbower v. Callicott,* 526 F.2d 1183, 1188 (8th Cir. 1975). "When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White v. Baptist Mem'l Health Care Corp.,* 699

F.3d 869, 876 (6th Cir. 2012).   Established procedures for overtime claims that employees regularly use can lighten the amount of inquiry required of an employer into potential overtime worked. *Hertz v. Woodbury Cry.,* 566 F.3d 775, 782 (8th Cir. 2009).

In order to prevail on his overtime claims, Plaintiff is required to present evidence that she worked more than her scheduled hours without compensation <u>and</u> that Defendants knew or should have known that Plaintiffs were working unpaid overtime. *Hertz v. Woodbury Cty.,* 566 F.3d 775, 781 (8th Cir. 2009).   There is no violation of the FLSA when an employer has no knowledge that an employee is engaging in overtime work and the employee fails to notify the employer of the overtime work. *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir. 1981).   When an employee "fails to follow reasonable time reporting procedures [they] [prevent] the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 876 (6th Cir. 2012).

Plaintiff cannot show that Driveline had actual or constructive knowledge that she was allegedly working unpaid overtime—in fact, Plaintiff testified that she never informed Driveline of the time Plaintiff's counsel included on her damages disclosures. The uncompensated time claimed by Plaintiff was time allegedly spent working at her home, working in a third-party store, or commuting alone in her car.  Undisputed Fact No. 2, 4, 12, 20, 31.

Plaintiff signed Driveline's Terms of Work Acceptance before accepting any projects.  The Terms of Work Acceptance provides, in relevant part,:

> 5.  I agree to complete the work within the time allowed for the work, as specified above.   I understand and agree that the time allowed for the work includes administrative time (e.g., preparation for routes, completion of work orders, submission of digital photographs, etc.) as well as store time ("Instore Time").   I further understand and agree that if additional time is needed to complete the work, such additional time must be pre-approved by my manager in writing.

...

10. I understand and agree that mileage and drive time ("drive time") I incur in completing the work will be calculated through the use of a route optimization powered by Google Maps/Map Quest/Other similar mapping services ("Route Optimization"). I further understand and agree that Driveline will not pay drive time, or reimburse mileage, for normal commute from my home to the first store on a given day or from the last store to my home. I further understand that if the route optimization on a given day shows that my home is located more than 30 miles from either the first store or the last store, I will be reimbursed for my mileage and paid for drive time incurred beyond the first 30 miles between my home and the first store or the last store, as applicable. Any compensable mileage or drive time between my home and either the first or last store will be calculated by route optimization.

Undisputed Fact No. 3.

Plaintiff was well aware of the established procedure to address claims that she had worked more hours than allotted and she never had any problems with seeking additional compensation for her time worked over the allotted amount, as she did in Summer 2018 and Christmas 2019. Undisputed Fact No. 5, 27-30. Plaintiff cannot establish that she followed Driveline's established reporting procedures on any of the wildly-speculative allegations that she worked 3,000+ hours without compensation.

It is undisputed that Plaintiff has presented no record evidence that she notified Driveline of any uncompensated time that she worked at home by himself or while driving alone in her car, or for any other compensable time not already compensated by Driveline. Plaintiff acknowledged that she had no specific knowledge of such allegedly-uncompensated time and believes it would be "impossible" to provide a reasonable estimate of the allegedly-uncompensated time. Even if any of Plaintiff's claimed damages are held to meet the evidentiary standard to survive summary judgment, it is indisputable that Driveline did not have knowledge of Plaintiff's specific claims of uncompensated working time. Therefore, Defendant is entitled to summary judgment as a matter of law.

## V. CONCLUSION

For these reasons, Driveline respectfully requests that the Court grant Defendant's Motion for Summary Judgment Against Shirley Black. Plaintiff's claims should be dismissed with prejudice because there are no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

Respectfully submitted,

*s/Lauren Barghols Hanna*
Kathryn D. Terry, Oklahoma Bar #17151
Lauren Barghols Hanna, OBA #21594
PHILLIPS MURRAH P.C.
Corporate Tower / Thirteenth Floor
101 North Robinson
Oklahoma City, OK  73102
Telephone:   (405) 235-4100
Facsimile:   (405) 235-4133
kdterry@phillipsmurrah.com
lbhanna@phillipsmurrah.com

and

WILLIAM STUART JACKSON,
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
Telephone:   (501) 371-0808
Facsimile:   (501) 376-9442
wjackson@wlj.com
***Attorneys for Defendant,***
***Driveline Retail Merchandising Inc.***

## CERTIFICATE OF SERVICE

I, Lauren Barghols Hanna, do hereby certify that true and correct copy of the foregoing Motion for Summary Judgment Against Plaintiff Shirley Black has been filed this 24th day of February 2022, via the Court's CM/ECF system which delivers notice to counsel of record:

SANFORD LAW FIRM, PLLC
Josh Sanford
One Financial Center
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (800) 615-4946

29

Facsimile: (888) 787-2040
Josh@sanfordlawfirm.com
**Attorney for Plaintiffs**

<u>/s/ Lauren Barghols Hanna</u>
Lauren Barghols Hanna