IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SHIRLEY BLACK *et al.*, each individually
 and on behalf of all others similarly situated                    PLAINTIFFS

v.                             Case No. 4:18-cv-00778-KGB

DRIVELINE RETAIL MERCHANDISING, INC.                               DEFENDANT

<u>ORDER</u>

Before the Court are defendant Driveline Retail Merchandising, Inc's ("Driveline") four motions for summary judgment as to claims filed by plaintiffs Derek Ward, Shirley Black, Rebecca Morris, and Rena McCraw (collectively "plaintiffs") (Dkt. Nos. 45; 48; 51; 54).  Plaintiffs filed individual responses to each motion directed at dismissing their claims, opposing Driveline's motions (Dkt. Nos. 62; 64; 66; 68).  For the following reasons, the Court denies Driveline's motions for summary judgment (Dkt. Nos. 45; 48; 51; 54).

I.      Factual Background

The Court draws the following facts, unless otherwise cited, from Driveline's statements of undisputed facts and plaintiffs' responses to Driveline's statements of undisputed facts (Dkt. Nos. 46; 49; 52; 55; 63; 65; 67; 69).

On October 29, 2018, Shirley Black, Rebecca Morris, and Rena McCraw, who were then Driveline employees, filed this lawsuit (Dkt. Nos. 65, ¶ 1; 67, ¶ 1; 69, ¶ 1).  Driveline employed Ms. McCraw as a master merchandiser, Ms. Black as a merchandiser, and Ms. Morris as a merchandiser; Ms. Morris continues to serve as a merchandiser based on the filings (Dkt. Nos. 65,

¶ 2; 67, ¶ 2; 69, ¶ 2).[1]  Plaintiff Derek Ward, formerly a master merchandiser for Driveline, joined the lawsuit on January 14, 2019 (Dkt. No. 63, ¶ 1).[2]  Plaintiffs allege that Driveline violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq.*, by failing to pay them properly (Dkt. Nos. 63, ¶ 1-2; 65, ¶ 1-2; 67, ¶ 1-2; 69, ¶ 1-2).  Specifically, they allege that Driveline failed to compensate them properly for:  (1) their morning preparatory work, (2) the first or last 30 miles of their drive time, (3) the actual hours they spent driving, (4) training hours, and (5) impromptu projects referred to by the parties as "non-bill" projects or "non-bills" (Dkt. Nos. 18-3, ¶¶ 3, 7; 62, at 5, 11, 23; 62-5, ¶¶ 7-12; 62-6, ¶¶ 6-11; 62-7, ¶¶ 6-11; 62-8, ¶¶ 6-11; 64, at 8, 14-21; 66, at 14-22; 68, at 14-24).

Based on the parties' filings, plaintiffs' responsibilities included:  driving to various third-party specialty stores, drug chains, dollar stores, and mass merchandisers to set up displays based on merchandising plans, including resets, updates, audits, seasonal merchandising, and stocking and replenishment of products (Dkt. Nos. 63, ¶ 2; 65, ¶ 2; 67; ¶ 2; 69, ¶ 2).  Their workdays started by logging into the Driveline portal to see what work they had been assigned for a given day (Dkt. Nos. 62-5, ¶¶ 8-9; 62-6, ¶¶ 6-7; 62-7, ¶¶ 6-7; 62-8, ¶¶ 6-7; 63, ¶ 19; 65, ¶ 6; 67, ¶¶ 14, 25; 69, ¶ 8).

---

[1]  The Court, based on the record before it, is unable to draw a clear distinction between the job duties of "master merchandiser" and "merchandiser" and determines, at least at this stage of the litigation, for purposes of resolving the pending motions for summary judgment, that the job responsibilities of plaintiffs appear to be sufficiently similar to presume that all plaintiffs had the same job responsibilities (Dkt. Nos. 62-5, ¶¶ 3-10; 62-6, ¶¶ 3, 5-9, 12; 62-7, ¶¶ 3, 5-9, 12; 62-8 ¶¶ 3, 5-9).

[2]  The Court declined to certify a collective action (Dkt. No. 29), and plaintiffs proceeded with their individual claims.  Driveline employed Mr. Ward when he joined the lawsuit (Dkt. No. 63, ¶ 1, 2).  Mr. Ward's employment lasted from March 30, 2017, to September 3, 2019 (*Id.*).  With the exception of Ms. Morris, none of the plaintiffs currently work for Driveline (Dkt. Nos. 63, ¶ 2; 65, ¶ 2; 67, ¶ 2; 69, ¶ 2).

According to Mr. Ward, these morning preparatory activities included:  arranging the projects in their schedules, printing necessary forms, calling stores to confirm scheduled arrival, and occasionally watching videos (Dkt. No. 63, ¶ 19).

Driveline's Terms of Work Acceptance ("Employment Terms") required each plaintiff to acknowledge that he or she would be compensated for the morning preparatory work and not for the first or last 30 miles of their travel time to a given work site (Dkt. Nos. 63, ¶ 3; 65, ¶ 3; 67, ¶ 3; 69, ¶ 3).  Moreover, Driveline required each employee to acknowledge that, when paid for drive time, he or she would not be paid for actual drive time but instead would be compensated based on the estimated time according to Google Maps or some other equivalent mapping application (Dkt. Nos. 18-3, ¶ 7; 63, ¶ 3; 65, ¶ 3; 67, ¶ 3, 69; ¶ 3).  Specifically, the relevant portions of the Employment Terms stated:

> . . .
>
> 3.      I agree to complete the work within the time allowed for the work, as specified above.  I understand and agree that the *time allowed for the work includes administrative time* (e.g., *preparation for routes,* completion of work orders, submission of digital photographs, etc.) as well as store time ("instore time").  I further understand and agree that if additional time is needed to complete the work, such additional time must be pre-approved by my Driveline manager in writing.
>
> . . .
>
> 7.      I understand and agree that mileage and drive time ("drive time") I incur in completing the work will be calculated through the use of a route optimization powered by Google Maps/Map Quest/other similar mapping services ("route optimization").  I further understand and agree that *Driveline will not pay drive time, or reimburse mileage, for normal commute from my home to the first store on a given day or from the last store to my home.*  I further understand that if my home is located more than 30 miles from either the first store on a given day or is located more than 30 miles from the last store, I will be reimbursed for my mileage and paid for drive time incurred beyond the first 30 miles between my home and the first store or beyond the first 30 miles between the last store and my home.  Any compensable mileage or drive time between my home and either the first or last store will be calculated by route optimization.

. . .

(Dkt. No. 18-3, ¶¶ 3, 7) (emphasis added).  Each plaintiff disputes that he or she was ever paid for preparatory work, which plaintiffs claim lasted between 15 to 45 minutes, despite Driveline's policy and contentions (Dkt. Nos. 62-5, ¶¶ 9-10; 62-6 ¶¶ 8-9; 62-7 ¶¶ 8-9; 62-8 ¶¶ 8-9; 63, ¶ 19; 65, ¶ 19; 67, ¶ 25; 69, ¶ 8).

Plaintiffs also trained Driveline's new hires and maintain that they were not fully compensated for that work (Dkt. Nos. 63, ¶ 13; 65, ¶ 25; 67, ¶ 27; 69, ¶ 33).  Instead of being fully compensated, plaintiffs claim that Driveline split their wages for this work with trainees, paying them effectively half of their actual wage (Dkt. Nos. 63, ¶ 13; 65, ¶ 25; 67, ¶ 27; 69, ¶ 33).

On occasion, projects would pop-up in the middle of the day; plaintiffs refer to these impromptu assignments as "non-bill" projects (Dkt. Nos. 62-5, ¶ 12; 62-6, ¶ 11; 62-7, ¶ 11; 62-8, ¶ 11).  Driveline claims it kept detailed records of all of plaintiffs' projects and time spent working (Dkt. No. 47, at 6; 50, at 6-7; 53, at 6; 54 at 6).  Plaintiffs maintain that these records are inaccurate and do not account for missing non-bill projects (Dkt. Nos. 62-5, ¶ 12; 62-6, ¶ 11; 62-7, ¶ 11; 62-8, ¶ 11).

Driveline maintained detailed records of plaintiffs' respective pay throughout their employment (Dkt. No. 47, at 6; 50, at 6-7; 53, at 6; 54 at 6).  Driveline claims that these records included specific documentation regarding plaintiffs' compensation for all drive time between stores visited within a workday and compensable mileage for each pay period of their employment, though plaintiffs' dispute this fact (Dkt. No. 47, at 6; 50, at 6-7; 53, at 6; 54 at 6).

## II.    Legal Standard

### A.    Summary Judgment Standard

Summary judgment is proper if there is no genuine issue of material fact for trial. *UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). A court should grant summary judgment when the facts, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable fact finder to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.      Requirements Under The FLSA and AMWA

#### 1.      General Wage Requirements

The FLSA and the AMWA require employers to pay qualifying employees a set minimum wage for all hours worked and overtime wages of one and one-half times the employee's regular rate.  29 U.S.C. §§ 206, 207, 213; Ark. Code Ann. §§ 11-4-210, 11-4-211.  As "[t]he FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner." *Cummings v. Bost, Inc.*, 218 F. Supp. 3d 978, 985-86 (W.D. Ark. 2016).  For this reason, the Court refers to only the FLSA in the subsequent paragraphs, though its analysis pertains to both statutes.

#### 2.      Employer Record Keeping Requirement

The burden of record keeping under the FLSA falls to the employer whose records must include the number of hours worked each day and the total number of hours worked each week for each employee.  29 U.S.C. § 211(c); Ark. Code Ann. §11-4-217; 29 C.F.R. § 516 *et seq*.  However, an employee who sues for unpaid overtime "has the burden of proving that he performed work for which he was not properly compensated." *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946) (superseded by statute on other grounds)).  If an employer has failed to keep records, as required by 29 U.S.C. § 211(c), "employees are not denied recovery under the FLSA simply because they cannot prove the precise extent of their uncompensated work." *Id.*  Rather, "employees are to be awarded compensation based on the most accurate basis possible." *Id.* (citation and internal quotations omitted).  "Under this relaxed standard of proof, once the employee has shown work performed for which the employee was not compensated, and sufficient evidence to show the

6

amount and extent of that work as a matter of just and reasonable inference, the burden then shifts
to the employer to produce evidence to dispute the reasonableness of the inference." *Id.* (citations
and internal quotations omitted).

### 3.    Wage Calculations

Among the several issues raised by plaintiffs are the legality of Driveline's route
optimization approach to paying employees for drive time, Driveline's exclusion of the first or last
30 miles of drive time as compensable, and whether Driveline compensated its employees for
preparatory time (Dkt. Nos. 18-3, ¶¶ 3, 7; 62, at 5, 11, 23;  62-5, ¶¶ 7-12; 62-6, ¶¶ 6-11; 62-7, ¶¶
6-11; 62-8, ¶¶ 6-11; 64, at 8, 14-21; 66, at 14-22; 68, at 14-24).  The Portal-to-Portal Act governs
and excludes the compensation of certain preliminary and postliminary activities in the workplace.
29 U.S.C. § 254 *et seq.*  The Eight Circuit Court of Appeals explained in *Lopez v. Tyson Foods,
Inc.,* 690 F.3d 869, 874 (8th Cir. 2012), that:

> [i]n the Portal-to-Portal Act, Congress excluded some activities that might
> otherwise constitute work from the FLSA.  The Act excepts two categories:  (1)
> walking, riding, or traveling to and from the actual place of performance of the
> principal activity or activities which such employee is employed to perform, and
> (2) activities which are preliminary to or postliminary to said principal activity or
> activities, which occur either prior to the time on any particular workday at which
> such employee commences, or subsequent to the time on any particular workday at
> which he ceases, such principal activity or activities.

"[A]ctivities performed either before or after the regular work shift, on or off the production line,
are compensable. . . if those activities are *an integral and indispensable part of the principal
activities* for which covered workmen are employed and are not specifically excluded by [29
U.S.C. § 254(a)(1) ]." *Steiner v. Mitchell,* 350 U.S. 247, 256 (1956) (emphasis added).  "[A]ny
activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity'
under [29 U.S.C. § 254(a) ].'" *Lopez,* 690 F.3d at 874 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21,
37 (2005)).  The Supreme Court summarized and clarified this "integral and indispensable" test in

*Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014), when it held that:  "an activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities."  *Id.*, at 37.

"The Department of Labor has a 'continuous workday rule,' generally defining an employee's 'workday' as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.' 29 C.F.R. § 790.6(b).'"  *Lopez*, 690 F.3d at 874 (citing *Alvarez*, 546 U.S. at 29, 37).   "During the continuous workday, the compensability of all activities that otherwise satisfy the requirements of the FLSA is not affected by the Portal-to-Portal Act's exceptions . . . " regardless of contract or custom to the contrary. *Lopez*, 690 F.3d at 874-75; *see also* 29 C.F.R. § 790.7(a).  The Supreme Court explained in *Alvarez* that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [the Portal-to-Portal Act], and as a result is covered by the FLSA." *Alvarez,* 546 U.S. at 37.

*De minimis* breaks from work lasting five to 20 minutes must generally be compensated if they occur throughout the course of the continuous workday.  29 C.F.R. § 785.18; *see Brown v. L&P Industries, LLC*, Case No. 5:04-cv-0379 JLH, 2005 WL 3503637, at *6 (E.D. Ark. Dec. 21, 2005) (relying on § 785.18 to find that a "brief break" each morning for 15 minutes "cannot properly be deducted from [an employee's] work hours"); *see also  Perez v. Am. Future Sys., Inc.*, Case No. cv 12-6171, 2015 WL 8973055, at *8 (E.D. Pa. Dec. 16, 2015) (explaining that courts generally recognize that work breaks approximately 20 minutes or less in duration should be compensated if taken during the span of a continuous workday); *Jones v. C & D Techs., Inc.*, 8

F.Supp.3d 1054, 1067 (S.D. Ind. 2014) (citing § 785.18 as support for the conclusion that a 20 minute lunch break is compensable time); *Lacy v. Reddy Electric Co.*, Case No. 3:11-cv-52, 2013 WL 3580309, at *14 (S.D. Ohio July 11, 2013) (citing § 785.18 as support for defendant's apparent concession that "employees must be paid for stand-alone breaks of 5-20 minutes."); *Solis v. Cindy's Total Care, Inc.*, Case No. 10 Civ. 7242 (PAE), 2012 WL 28141, at *9, 19 (S.D.N.Y Jan 5, 2012) (citing § 785.18 to support the conclusion that compensable time "also includes work breaks approximately of 20 minutes or less in duration."); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 747 F. Supp.2d 1043, 1056-1057 (E.D. Wis. 2010) (citing § 785.18 and § 778.223 to support the conclusion that rest breaks of five to 20 minutes "taken outside of [the employer's] provided rest breaks should be considered work time under the FLSA."); *Reich v. Cole Enterprises*, Inc., 901 F. Supp. 255, 260 (S.D. Ohio 1993) (concluding that "cigarette breaks" taken by employees are compensable time under § 785.18); *Martin v. Waldbaum, Inc.*, Case No. CV 86-0861 (DRH), 1992 WL 314898, at *1 (E.D.N.Y. Oct. 16, 1992) (citing § 785.18 and concluding as a matter of law that "breaks of less than twenty minutes are compensable" and short employee breaks for personal telephone calls and cigarettes "are commonplace and sensible in any working environment").

On the other hand, *de minimis* before work and after work activities need not be compensated. *See, e.g., Adair v. ConAgra Foods, Inc.*, 728 F.3d 849, 851 (8th Cir. 2013) (denying compensation for *de minimis* donning and doffing before and after work when a union contract established that donning and doffing were not compensable activities); *see also Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1073 (9th Cir. 2016) (determining that a lack of pay for a *de minimis* activity is not actionable under the FLSA; *Chambers v. Sears Roebuck and Co.*, 428 Fed. App'x. 400, 1388 (5th Cir. 2011) (unpublished) (declining to extend the *Alvarez*

holding to a situation involving a technicians' pre-commute activities and post-commute evening activities when those activities were incidental to the commute or *de minimis*).

During the course of the continuous workday, employers are legally obliged to pay employees for the time spent engaged in actions which are "integral and indispensable" to their "principal activities." *Busk*, 574 U.S. at 37; *Alvarez*, 546 U.S. at 26-30; *Steiner*, 350 U.S. at 256. Compensation must be based on the employee's actual time spent doing any activity within the span of the continuous workday; reasonable estimates are insufficient to satisfy the FLSA. *Helmert v. Butterball, LLC*, 805 F.Supp.2d 655, 662-667 (E.D. Ark. 2011) (explaining that employers are required to pay employees for actual hours worked, not reasonable estimates). Travel classified as a commute does not trigger the continuous workday doctrine and is generally not compensable. *Donatti v. Charter Commc'ns, L.L.C.*, 950 F.Supp.2d 1038, 1049-50 (W.D. Mo. 2013). However, "[t]ravel that is an indispensable part of performing one's job is a principal activity and is compensable." *Vega v. Gasper*, 36 F.3d at 424-25 (5th Cir. 1994) (abrogated on other grounds). Department of Labor regulations make this point clear. For example, 29 C.F.R. § 785.28 provides that:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

Put simply, "[o]n one end of the spectrum, ordinary home-to-work travel is not compensable; at the other stands the proposition that '[t]ravel that is an indispensable part of

performing one's job is a principal activity and is compensable.'" *Preston v. Settle Down Enterprises, Inc.*, 90 F.Supp.2d 1267, 1280 (N.D. Ga. 2000); *see also Crenshaw v. Quarles Drilling Corp.,* 798 F.2d 1345, 1359 (10th Cir. 1986) (holding that travel time in a specially equipped employer truck is compensable); *Spencer v. Auditor of Public Accounts,* 928 F.2d 405 (6th Cir. 1991) (unpublished) (determining that travel between job sites is compensable, but not travel from home to different job sites on different days); *Pizano v. Big Top & Party Rentals, LLC*, Case No. 15-cv-11190, 2017 WL 1344526, at *2 (N.D. Ill. Apr. 12, 2017) (quoting *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, Case No. 00 C 5755, 2004 WL 1882449, at *3 (N.D. Ill. Aug. 18, 2004), for the proposition that "travel time is not covered by the statutes if the employee did not perform any preparation before traveling to the job site or if the employee did not perform any cleanup after leaving the job site."); *Dole v. Enduro Plumbing, Inc.*, Case No. 88-7041-RMT (KX), 1990 WL 252270, at *4 (C.D. Cal. Oct. 16, 1990) (determining that "[w]here. . . an employee is required to report to a designated meeting place. . . to receive instructions before he proceeds to another workplace (such as the jobsites. . .), the start of the workday is triggered at the designated meeting place, and subsequent travel is part of the day's work and must be counted as hours worked for purposes of the FLSA, regardless of contract, custom, or practice.").

## III.   Discussion

This case arises from plaintiffs' allegations that, during their employment with Driveline, Driveline violated the FLSA by failing to pay them the statutorily required overtime wage for the hours worked in excess of 40 per week (Dkt. No. 1, ¶ 1).  Specifically, plaintiffs claim that Driveline owes them damages because it failed to pay them properly for:  (1) their morning preparatory work, (2) the first or last 30 miles of their drive time, (3) the actual hours they spent driving from home and between job sites, (4) training hours, and (5) several "non-bill" projects

(Dkt. Nos. 18-3, ¶¶ 3, 7; 62, at 5, 11, 23; 62-5, ¶¶ 7-12; 62-6, ¶¶ 6-11; 62-7, ¶¶ 6-11; 62-8, ¶¶ 6-11; 64, at 8, 14-21; 66, at 14-22; 68, at 14-24).  Driveline does not dispute that these workers are not exempt from the FLSA overtime requirements, but Driveline argues that each plaintiff was properly paid per the terms of his or her Employment Agreement (Dkt. No. 7, ¶ 15; 18-3, ¶¶ 3, 7).  Driveline further contends that plaintiffs' damages disclosures, testimony, and calculations are insufficient to support any claim for additional wages.

A threshold inquiry is whether Driveline has met its burden of maintaining valid records under the FLSA.  29 U.S.C. § 211; 29 C.F.R. § 516.2.   As discussed above, though the employer has the burden to keep records, employees who sue for unpaid wages have the burden of showing that they performed the work for which they were not compensated.  *Holaway*, 771 F.3d at 1059. However, the Supreme Court in *Anderson v. Mt. Clemens Pottery Co.* determined that:

> [w]hen the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records.  But where the employer's *records are inaccurate or inadequate* and the employee cannot offer convincing substitutes a more difficult problem arises.  The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.  In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was *improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference*.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

328 U.S. at 687-88 (emphasis added).  Driveline maintains in each of its briefs in support of its four motions for summary judgment that the *Mt. Clemens* burden shifting framework is inapplicable, as Driveline claims it has presented detailed records showing the hours worked by

each plaintiff, breaking down that time by regular time, drive time, and overtime (Dkt. Nos. 47, at 5-7; 50, at 6-7; 53, at 5-6; 57, at 5-6).  Plaintiffs, on the other hand, argue that the *Mt. Clemens* burden shifting framework applies here because they have provided sufficient evidence to call into question the accuracy of Driveline's payroll records (Dkt. Nos. 62 at 10-12; 64, at 7-9; 66, at 7-9; 68, at 7-9).  Specifically, plaintiffs argue that they have provided sufficient evidence to indicate that Driveline failed to pay them completely for the following:  (1) their morning preparatory work, (2) the first or last 30 miles of their drive time, (3) the actual hours they spent driving, (4) training hours, and (5) "non-bill" projects (Dkt. Nos. 18-3, ¶¶ 3, 7; 62, at 5, 11, 23;  62-5, ¶¶ 7-12; 62-6, ¶¶ 6-11; 62-7, ¶¶ 6-11; 62-8, ¶¶ 6-11; 64, at 8, 14-21; 66, at 14-22; 68, at 14-24).  The Court need not determine all of these issues.

The Court has before it four motions for summary judgment; plaintiffs have not filed cross-motions for summary judgment (Dkt. Nos. 45; 48; 51; 54).  At this stage in the litigation, all plaintiffs must do to survive Driveline's motions is to show a genuine dispute of an outcome determinative material fact in the record before this Court.  *UnitedHealth*, 870 F.3d at 861. Driveline argues that no genuine dispute of material fact exists, as it has provided 11,000 documents over the course of this litigation, including detailed records of plaintiffs' paystubs (Dkt. Nos. 47 at 2; 50 at 2; 53 at 2; 56, at 2).  However, the Court, on the record before it, finds that at least one of the documents provided by Driveline calls into question the accuracy and adequacy of its records. *See generally Mt. Clemens*,  328 U.S. at 687-88.  The Employment Terms, provided by Driveline and signed by each of the plaintiffs, contain provisions informing plaintiffs that they will be paid for "administrative time," which includes time preparing routes, completing work orders, and submitting digital photos (Dkt. Nos. 18-3, ¶ 3; 63, ¶ 3; 65, ¶ 3; 67, ¶ 3; 69, ¶ 3).  That same document includes provisions limiting employee compensation for the first 30 miles of drive

time from an employee's home to his or her first job site (Dkt. Nos. 18-3, ¶ 7; 63, ¶ 3; 65, ¶ 3; 67, ¶ 3; 69, ¶ 3).

Plaintiffs testified that they began each workday by logging into the Driveline client portal to see that day's assigned projects (Dkt. Nos. 62-5, ¶¶ 8-9; 62-6, ¶¶ 6-7; 62-7, ¶¶ 6-7; 62-8, ¶¶ 6-7; 63, ¶ 19; 65, ¶ 6; 67, ¶¶ 14, 25; 69, ¶ 8).  They estimate spending anywhere from 15 to 45 minutes on this preparatory work which, according to Mr. Ward, included:  arranging the projects in their schedules, printing necessary forms, calling stores to confirm the scheduled arrival, and occasionally watching videos (Dkt. Nos. 63, ¶ 19; 65, ¶ 6; 67, ¶¶ 14, 25; 69, ¶ 8).[3]  After this preparatory work, the Court understands that each plaintiff would each drive to his or her respective first job site, the first 30 miles of which Driveline, per the Employment Terms, did not compensate (Dkt. No. 18-3, ¶ 7).  If plaintiffs' workdays began, as the Employment Terms state, with paid preparatory work, then any "integral and indispensable part of . . . ." their subsequent work should be classified as part of their continuous workday.  *Lopez,* 690 F.3d at 874.

In assessing the start of plaintiffs' workday on the facts before it, the Court finds the *Dole* case informative.  1990 WL 252270, at *5.  In *Dole*, the district court reasoned that if an:

> "employee is required to *report to a designated meeting place* . . . to receive instructions before he proceeds to another workplace (such as the jobsites . . .), the start of the workday is triggered at the designated meeting place, and subsequent travel is part of the day's work and must be counted as hours worked for purposes *of the FLSA, regardless of contract, custom, or practice*."

---

[3]  As noted above, the Court, based on the record before it, is unable to draw a clear distinction between "master merchandiser" and "merchandiser" and determines that the job responsibilities of the plaintiffs appear to be sufficiently similar to presume, at this stage of the litigation and on the record before it, that all plaintiffs had the same job responsibilities (Dkt. Nos. 62-5, ¶¶ 3-10; 62-6, ¶¶ 3, 5-9, 12; 62-7, ¶¶ 3, 5-9, 12; 62-8 ¶¶ 3, 5-9).  Given this conclusion, the Court also presumes that each plaintiff's preparatory activities were similar to that of Mr. Ward (Dkt. Nos. 63, ¶ 19; 65, ¶ 6; 67, ¶¶ 14, 25; 69, ¶ 8).

*Id.* (emphasis added); *see Herman v. Rich Kramer Const., Inc.*, 163 F.3d 602 (8th Cir. 1998) (unpublished opinion)(citing *Dole*, 1990 WL 252270, at *5); *see also Vega*, 36 F.3d at 424 (abrogated on other grounds) (determining that "[t]ravel that is an indispensable part of performing one's job is a principal activity and is compensable."). Other courts left to determine when an employee's workday starts have reached similar conclusions. In *Pizano v. Big Top & Party Rentals*, Case No. 15-cv-11190, ,2017 WL 1344526, at *2 (N.D. Ill. Apr. 12, 2017), the district court determined that "travel time is not covered by the statutes *if the employee did not perform any preparation before traveling to the job site* or if the employee did not perform any cleanup after leaving the job site." *Id.* (emphasis added). While the record before this Court does not involve an employee driving to an office location to receive instruction, the Court is not convinced, on the record before it and by the authorities cited by the parties, that this situation should be treated differently. In other words, the Court determines, at least at this stage of the litigation, that this situation might present the modern-day equivalent of such a factual scenario made possible by the internet.

By the Employment Terms and on the record evidence before it with all reasonable inferences drawn in plaintiffs' favor, a reasonable finder of fact could determine that plaintiffs' continuous workdays began when they started their preparatory work, for which they were, according to Driveline, paid (Dkt. No. 18-3, ¶ 3). The Employment Terms, which state that "time allowed for the work includes administrative time . . . e.g., preparation for routes . . . .," may have created a start time triggering the continuous workday day rule when plaintiffs logged onto Driveline's portal. *See Pizano*, 2017 WL 1344526, at *2; *Dole*, 1990 WL 252270, at *4; 29 C.F.R. § 785.38. This Court is not the first to deal with such a situation where the reality of new technology presents unique questions of when FLSA compensable time starts. Though this Court

15

could find no instance in which the Eighth Circuit has directly answered whether logging onto an employer system starts a workday and the Court does not understand the parties to have cited such a case, the Eighth Circuit has endorsed the notion that "[a]ctivities performed either before or after the regular work shift, on or off the production line, are compensable . . . if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by 29 U.S.C. § 254(a)(1)." *Lopez*, 690 F.3d at 874.

In reaching its decision on the pending motions, the Court also has considered several other cases where courts have examined similar issues to the one at bar. For example, in *Wilson v. Peckham, Inc.*, Case No. 1:20-cv-565, 2021 WL 3168616, at *1 (W.D. Mich. July 26, 2021), a plaintiff argued that she was entitled to payment under the FLSA for time spent starting her computer and logging onto her employer's system. Similar to the plaintiffs here, the *Wilson* employer required plaintiff employees to follow a preparatory protocol that included: turning on the computer, entering a username and password, connecting to the employer's network, opening the timekeeping software, entering her username and password in the time keeping software, and then clicking "clock in." *Wilson*, 2021 WL 3168616, at *1. The *Wilson* court reasoned that work started when the employees arrived at their workspaces and started their computers. *Id.* at *5. The Tenth Circuit reached a similar conclusion in *Peterson v. Nelnet Diversified Solutions.*, LLC, 15 F.4th 1033, 1041 (10th Cir. 2021), when it concluded that "preshift activities of booting up a computer and launching software [were] integral and indispensable to [an employee's] principal duties of servicing student loans by communicating with borrowers over the phone and by email."

On the other hand, the Ninth and Fifth Circuits have determined that logging into a computer or computer-like device that is used only to receive daily assignments is not compensable based on the facts the courts examined in those cases. *Chambers*, 428 F. App'x at 417

(unpublished) (holding that for appliance repairmen, "logging in to receive the first assignment in the morning" is non-compensable); *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1060 (9th Cir. 2010) (holding that a vehicle technician's "morning activities" that included logging on to a hand-held computer device . . . that informed him of his jobs for the day" were non-compensable); *see also Rickard v. Hennepin Home Health Care, Inc.*, Case No. 15-cv-3224 (JNE/KMM), 2016 WL 6089690, at *4 (D. Minn. Oct. 17, 2016) (citing *Rutti* for the proposition that, when an employer does not require an employee "to perform her administrative tasks at any particular time during the day," they are not part of the continuous workday); *Donatti*, 950 F.Supp.2d at 1049-50 (applying the *Rutti* holding to determine that two broadband technicians could not recover for commuting in a company car absent a contract or custom to the contrary); *Jones v. Best Buy Co.*, Case. No. cv 12-95 (PAM/FLN), 2012 WL 13054831, at *2 (D. Minn. Apr. 12, 2012) ([c]iting *Rutti* and noting that "[r]elevant considerations are 'whether the activities are performed as part of the regular work of the employees in the ordinary course of business' and the 'extent to which the work impacts the employee's freedom to engage in other activities.'"); *Ahle v. Veracity Rsch. Co.*, 738 F.Supp.2d 896, 916 (D. Minn. 2010) (concluding, after citing *Rutti*, that employees for a private investigation company could not be compensated for "cleaning, maintenance, and fueling" their vehicles prior to going on an investigation nor could the investigators recover under the FLSA for the "mapping of directions to the residence of the subject of the investigation," but determining that "conducting a preliminary investigation, reviewing an assignment sheet, completing and uploading DIRs, and driving to a FedEx drop box may qualify as either principal activities or activities integral to principal activities."). The *Rutti* and *Chambers* courts also noted that, when logging on occurs briefly and prior to the employee's commute, it will be considered part of the

commute rather than the employee's principal activities.  *Chambers*, 428 F. App'x at 417; *Rutti*, 596 F.3d at 1057.

The Court finds, at least at this stage and on the record evidence before it, that this case appears distinguishable from *Rutti* and *Chambers*, as plaintiffs here were contractually obligated and paid to do their preparatory work; when the record evidence is considered in the light most favorable to plaintiffs their preparatory work was more than *de minimis*; and this Court questions whether the *Rutti* and *Chambers* holdings have been modified by the "intrinsic element" refinement to the principal activities test announced in *Busk*.  To date, the parties have not extensively addressed these issues in their filings.

To begin, the plaintiff in *Rutti* sought compensation for "off the clock" work that included "receiving, mapping, and prioritizing jobs and routes for assignments."  *Rutti*, 596 F.3d at 1057.  While it is true that plaintiffs here received jobs and mapped, prioritized, and planned their daily routes, Mr. Ward testified that he called stores to confirm his scheduled arrival and, at times, watched mandatory videos prior to leaving for the day (Dkt. No. 63, ¶ 19).[4]  Moreover, the record before the Court indicates that, unlike the plaintiffs in *Rutti* and *Chambers*, plaintiffs here were not considered off the clock while doing any preparatory work, and at least one plaintiff testified that he was required to complete his preparatory work before departing to the job site (Dkt. No. 18-3, ¶ 3; 62-4 at 72:11-13).  *Chambers*, 428 F. App'x at 403-04;  *Rutti*, 596 F.3d at 1057.

_____

[4] Again, the Court notes that, based on the record before it, the Court is unable to draw a clear distinction between "master merchandiser" and "merchandiser" and determines that the job responsibilities of plaintiffs appear at this stage of the litigation sufficiently similar to presume that all plaintiffs had the same job responsibilities (Dkt. Nos. 62-5, ¶¶ 3-10; 62-6, ¶¶ 3, 5-9, 12; 62-7, ¶¶ 3, 5-9, 12; 62-8 ¶¶ 3, 5-9).  Given this conclusion, the Court also presumes, at least at this stage of the litigation, that each plaintiff's preparatory activities were similar to that of Mr. Ward (Dkt. Nos. 63, ¶ 19; 65, ¶ 6; 67, ¶¶ 14, 25; 69, ¶ 8).

*Rutti* and *Chambers* also differ from the case at bar in that the plaintiffs in those cases did not demonstrate that their preparatory work was more than *de minimis* (Dkt. Nos. 63, ¶ 19; 65, ¶ 6; 67, ¶¶ 14, 25; 69, ¶ 8). *Chambers*, 428 F. App'x at 418; *Rutti.*, 596 F.3d at 1060; *Musticchi v. City of Little Rock, Ark.*, 734 F.Supp.2d 621, 632 (E.D. Ark. 2010) (noting that "[m]ost federal courts after *Anderson* have found a time period of ten minutes or less per day to be *de minimis*."). Courts consider the following factors when determining whether work performed by the employee is *de minimis*: "[1] the amount of time spent on the extra work, [2] the practical administrative difficulties of recording additional time, [3] the regularity with which the additional work is performed, and [4] the aggregate amount of compensable time." *Lyons v. Conagra Foods Packaged Foods LLC*, 899 F.3d 567, 584 (8th Cir. 2018) (citing *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011) (citing *Lindow,* 738 F.2d 1057, 1062 (9th Cir.1984)); *see also Rutti*, 596 F.3d at 1057 (quoting *Lindow,* 738 F.2d at 1062); *Chambers*, 428 F. App'x at 418 (citing *Rutti* for the *de minimis* test set forth in *Lindow*). Applying those factors, most federal courts have concluded that ten minutes or less is considered *de minimis*. *Musticchi*, 34 F. Supp. 2d at 632. Here, record evidence at this stage of the proceeding viewed in the light most favorable to plaintiffs indicates that plaintiffs spent between 15 to 45 minutes a day on preparatory tasks, a marked difference from the 8.5 seconds in *Chambers* and the five to ten minutes in *Rutti* (Dkt. Nos. 63, ¶ 19; 65, ¶ 6; 67, ¶¶ 14, 25; 69, ¶ 8). *Chambers*, 428 F. App'x at 404; *Rutti*, 596 F.3d at 1058.

Lastly, the Ninth and Fifth Circuits made their pronouncements in *Rutti* and *Chambers* before the Supreme Court's decision in *Busk*. In *Busk*, the Supreme Court held that "an activity is integral and indispensable to the principal activities that an employee is employed to perform— and thus compensable under the FLSA—if it is an *intrinsic element* of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Busk*, 574

U.S. at 37 (emphasis added).  The integral and indispensable test is tied to the productive work that the *employee is employed to perform*. *Id.* at 36 (emphasis added).  At this stage of the litigation, on the record evidence viewed in the light most favorable to plaintiffs, the Court cannot conclude as a matter of law that plaintiffs here are not akin to the call-center representatives in *Peterson* whose employer failed to pay them for booting up their work computers and launching certain software before they clocked in.  *Peterson*, 15 F.4th at 1035.  The Tenth Circuit in *Peterson* determined that the call-center representatives' "preshift activities of booting up a computer and launching software [were] integral and indispensable to [the employee's] principal duties of servicing student loans by communicating with borrowers over the phone and by email." *Id.* at 1035.  This Court cannot conclude as a matter of law, at this stage of the litigation, on the record evidence before it, that arranging projects, printing necessary forms, calling stores to confirm appointments, and watching instructional videos were not "intrinsic element[s]" to plaintiffs' principal duties of merchandising stores belonging to Driveline's clients (Dkt. Nos. 63, ¶ 19; 65, ¶ 6; 67, ¶¶ 14, 25; 69, ¶ 8).

The Court concludes, in the light of the holdings in *Busk* and *Peterson*, based on the record evidence viewed in the light most favorable to plaintiffs,  that there is at minimum a genuine issue of material fact regarding whether, based on plaintiffs' Employment Terms, their workdays began when they logged onto the Driveline portal (Dkt. No. 18-3, ¶ 3).  *See Busk*, 574 U.S. at 36-37; *Peterson*, 15 F.4th at 1035, 1041, 1049; *Wilson*,  2021 WL 3168616, at *5.  Plaintiffs appear to contend that, as soon as plaintiffs logged on, they reported to the designated meeting place to receive their daily instruction and their continuous workday began.  *Dole* WL 252270, at *4; *see also Pizano*, 2017 WL 1344526, at *2; *see also Peterson*, 15 F.4th at 1041.  There is record evidence before the Court that, when viewed in the light most favorable to plaintiffs, suggests that,

subsequent to logging onto Driveline's portal, plaintiffs' commute to the first store transformed from ordinary home-to-work travel to travel that was an "intrinsic element" of performing their principal activity of merchandising certain stores; if so, the Court anticipates plaintiffs will argue that commute became indispensable and part of plaintiffs' continuous workday. *Busk*, 574 U.S. at 37; *Lopez*, 690 F.3d at 874 (determining that "[a]ctivities performed either before or after the regular work shift, on or off the production line, are compensable. . . if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by 29 U.S.C. § 254(a)(1)."); *Vega*, 36 F.3d at 424-25 (concluding that "[t]ravel that is an indispensable part of performing one's job is a principal activity and is compensable."); *Preston*, 90 F. Supp. 2d at 1280; 29 C.F.R. § 785.38.

Plaintiffs present record evidence that when viewed in the light most favorable to plaintiffs suggests, through the Employment Terms, that their workdays started when they began their preparatory work. They have also presented record evidence that when viewed in the light most favorable to plaintiffs may demonstrate that plaintiffs were not paid for the subsequent first 30 miles of drive time, thereby calling into question the accuracy of Driveline's payroll records (Dkt. Nos. 18-3, ¶¶ 3, 7; 63, ¶ 3; 65, ¶ 3; 67, ¶ 3; 69, ¶ 3).

There is record evidence that, with respect to plaintiffs' claim regarding the actual hours they spent driving between job sites, Driveline compensated plaintiffs for mileage and drive time through the use of a route optimization powered by Google Maps/Map Quest/other similar mapping services (Dkt. No. 18-3, ¶¶ 3, 7). Plaintiffs maintain this practice, when plaintiffs were not made aware of the mileage and drive time Driveline intended to pay, violated the FLSA.

Further, plaintiffs have presented record evidence that, when viewed in the light most favorable to plaintiffs, could lead a reasonable trier of fact to conclude that plaintiffs trained

Driveline's new hires and were not fully compensated for that work, despite making Driveline aware of the situation (Dkt. Nos. 63, ¶ 13; 65, ¶ 25; 67, ¶ 27; 69, ¶ 33).  Instead of being fully compensated, plaintiffs claim that Driveline split their wages for this work with trainees, paying them effectively half of their actual wage (Dkt. Nos. 63, ¶ 13; 65, ¶ 25; 67, ¶ 27; 69, ¶ 33).  The record evidence creates a genuine dispute of material fact regarding plaintiffs' claims for this work.

In addition, when all reasonable inferences from the record evidence are viewed in the light most favorable to plaintiffs, although Driveline claims that it kept detailed records of all of plaintiffs' projects and time spent working (Dkt. No. 47, at 6; 50, at 6-7; 53, at 6; 54 at 6), a reasonable fact finder could conclude that plaintiffs' pay did not account for missing non-bill projects (Dkt. Nos. 62-5, ¶ 12; 62-6, ¶ 11; 62-7, ¶ 11; 62-8, ¶ 11).  The record evidence creates a genuine dispute of material fact regarding plaintiffs' claims for this work.

For each of these claims, a reasonable factfinder could find on the record evidence with all reasonable inferences drawn in favor of plaintiffs that Driveline had actual or constructive knowledge of the unpaid hours plaintiffs worked.

Moreover, given the status of plaintiffs' claims, viewed in the light most favorable to plaintiffs, the record evidence calls into question the accuracy of Driveline's payroll records.  The parties dispute whether the relaxed evidentiary standard under *Mt. Clemens*, 328 U.S. at 687-88, applies.  Under this relaxed standard of proof, plaintiffs must provide sufficient evidence to show the amount and extent of the work they did "as a matter of just and reasonable inference." *Holaway*, 771 F.3d at 1059.  The burden will then shift to Driveline to "produce evidence to dispute the reasonableness of the inference."  *Id.*  "[W]hen an employer has failed to keep proper records, courts should not hesitate to award damages based on the 'just and reasonable inference' from the evidence presented."  *Reich v. Stewart,* 121 F.3d 400, 406 (8th Cir. 1997).

Driveline challenges plaintiffs' damages estimates, making the same assertions essentially as to each plaintiff.  Driveline maintains that plaintiffs testified that they had not seen at their depositions the damages disclosure documents that were produced until the documents were presented at the depositions, that plaintiffs each gave testimony that Driveline characterizes as internally contradictory and expressly contradicted by verified answers to interrogatories and damages disclosures, and that the damages disclosure documents were not supplemented from the time of depositions until the close of discovery (Dkt. No. 47; 50; 53; 56).  Viewing the record evidence in the light most favorable to plaintiffs and having studied the legal authorities cited, the Court denies Driveline's motions for summary judgment on the basis of Driveline's damages arguments.  Driveline's arguments may go to the weight to be given to the record evidence of damages and cast doubt on plaintiffs' credibility with respect to the amount of damages, but plaintiffs have presented sufficient evidence of damages to survive summary judgment on their claims.

Based on this legal analysis and the record evidence before the Court viewed in the light most favorable to plaintiffs, plaintiffs survive Driveline's four motions for summary judgment.

## IV.    Conclusion

For the proceeding reasons, the Court denies Driveline's motions for summary judgment (Dkt. Nos. 45; 48; 51; 54).  The matter is scheduled to be tried before the Court beginning April 26, 2022.

It is so ordered this 19th day of April, 2022.

Kristine G. Baker
United States District Judge

23